## STATE v. CARL MARKUSON.

113 N. W. (2d) 346.

January 26, 1962—No. 38,283.

*Carl D. Markuson,* pro se, for petitioner.

*Walter F. Mondale,* Attorney General, *George M. Scott,* County Attorney, and *Gerard W. Snell,* Assistant County Attorney, for respondent.

MURPHY, JUSTICE.

This case is before us on a writ of error filed by the defendant, Carl Markuson, who is now confined in the State Reformatory under a sentence following a verdict of guilty. He was tried on an information charging him with the offense of grand larceny in the first degree. The information, on which he was tried separately, charged that he, Robert Michael Lettiere, William George Canfield, and John Edward Sta. Maria on February 12, 1960, stole the sum of $2,285.85, together with other merchandise, from Morrie & Tubby's grocery store in the city of Minneapolis. Numerous errors are assigned, the principal one of which is that the evidence is insufficient to support the verdict.

It appears from the record that about 3:30 a. m. on February 12, 1960, while two police officers of the city of Minneapolis were on patrol in their squad car, they observed a white Chevrolet convertible automobile double-parked on 35th Street between Emerson and Dupont Avenues. The headlights were on and the motor was running. The officers observed two men behind the car attempting to close the trunk. They also observed what appeared to be a safe in the trunk. As the squad car approached and its spotlight was put on them, the occupants of the parked car got in and sped away. A chase followed which

lasted for 1 or 2 minutes. The driver of the Chevrolet lost control in attempting to make a turn on the icy pavement. The Chevrolet ran into a curb and came to a stop. At that time the trunk opened and exposed the safe. The officers observed that four or five men got out of the car and ran in different directions. One man, described by one of the officers as wearing a short gray or tan jacket and brown or tan pants, ran down a well-lit alley. Both of the officers fired shots in the air, at which time this man raised his arms, fell forward, and then got up and ran again. Another occupant of the Chevrolet, Lettiere, was found lying on the right side of the car. He was immediately taken into custody. The officers radioed for assistance and other cars were sent to patrol the district in search of the other occupants of the car. About 15 minutes after this occurrence officers in another squad car searching the area apprehended the defendant walking along the street at a point about 3½ blocks from where the white Chevrolet had stopped. He identified himself and said that he was coming from a party at his home and that he was on his way to visit a friend. He was wearing light tan pants and a short gray jacket. There was a tear in the right leg of his trousers. His jacket was soiled and there was a tear in the front of it. When asked by the officers how he had torn his pants and jacket, he replied that they were the best clothes he had. He was breathing heavily and testified that he had been sick in the alley just prior to being picked up by the officers. There was a slight odor of liquor on his breath.

It appears that on the previous evening and early hours of that morning the defendant had been at a party attended by the other persons named in the information. There is evidence in the record which would indicate that the defendant, Lettiere, and others left the party with the idea of committing a theft. The defendant in a conversation with one of the police officers after his arrest stated that Lettiere was the most guilty of the group, because it was he who had said: "Let's go out and rob a place to get some food." The safe and other personal property found in the Chevrolet were identified as property stolen from the food market referred to in the information.

■ The defendant's principal argument is that the evidence is in-

sufficient to support the verdict. In determining this issue the scope of our review is limited to ascertaining whether under the evidence contained in the record the jury could reasonably find the accused guilty as charged. If the jury, acting with due regard for the presumption of innocence and for the necessity of overcoming it by proof beyond a reasonable doubt, could reasonably conclude that the defendant was proved guilty of the offense charged, the reviewing court will not disturb its verdict.[1] The record establishes that the defendant, a few hours before the offense was committed, was in company with Lettiere, who was admittedly involved in the offense. The defendant was apprehended in the vicinity of the place where Lettiere was arrested and within a short time thereafter. While the police officer's description of the defendant as one of the parties who fled after the Chevrolet came to a stop is not entirely accurate, it was nevertheless of sufficient substance for the jury to consider in connection with other evidence in the case. Of greater importance is the identification of the defendant as an occupant of the car by Lettiere. In testifying as to the occupants of the car when the offense was committed, there was the following testimony by Lettiere:

"Q   Were you alone in the car at that time?

"A   No, I wasn't.

"Q   Who was with you?

"A   To the best of my knowledge, and as well as I can remember on that night, there was me, Dahlgren, Sta. Maria, a fellow driving and Markuson, I think.

\*       \*       \*       \*       \*

"Q   Was this defendant, Carl Markuson, in the car at that time?

"A   I am pretty sure he was.

\*       \*       \*       \*       \*

"Q   Well, you see this man Markuson in Court now?

"A   Yes.

---

[1]State v. Golden, 216 Minn. 97, 12 N. W. (2d) 617; State v. Gavle, 234 Minn. 186, 48 N. W. (2d) 44; State v. Lux, 235 Minn. 181, 50 N. W. (2d) 290; State v. Waltz, 237 Minn. 409, 54 N. W. (2d) 791.

"Q   Can you state whether or not he was the Markuson that you stated was in the car that particular night?

"A   Well, I hate to swear to it, but—I don't know. I'd have to say yes."

Viewing the evidence as a whole, together with admissions of the defendant made to the investigating officer, we are satisfied that there is sufficient evidence in the record from which the jury could rationally conclude that the defendant was guilty as charged.[2]

■   The defendant next contends that he was unduly prejudiced because he was required to come into court wearing handcuffs and that they were not removed until after he was in the courtroom. If there were any substance to this claim, the circumstances and effect thereof would have the careful scrutiny of this court. The claim, however, is based upon the bald assertion of the defendant with nothing more. Although the defendant was represented by able counsel, no objection is preserved in the record with relation to this asserted incident. Appellate jurisdiction is limited to a review of the proceedings in the lower court as evidenced by the record. The appellate court can consider no matters which were not properly raised and acted upon below and which were not properly saved for review and made a part of the record.[3]

■   The next assignment of error relates to asserted prejudicial statements of police officers given on examination by the prosecuting attorney. In answer to certain questions police officers volunteered information not responsive to the questions. This information related to prior unlawful conduct on the part of the defendant. It was objected to by defendant's counsel, after which the court carefully admonished the jury to disregard it. The court further in its instructions warned the jury that it was not to consider such responses volunteered by the police officers. We have carefully examined this testimony in

---

[2]State v. Farmer, 179 Minn. 516, 229 N. W. 789; State v. Bailey, 235 Minn. 204, 50 N. W. (2d) 272.

[3]State v. Lemke, 207 Minn. 35, 290 N. W. 307; State v. Soltau, 212 Minn. 20, 2 N. W. (2d) 155; State v. Hankins, 193 Minn. 375, 258 N. W. 578; State v. Brown, 41 Minn. 319, 43 N. W. 69.

context with the entire record. We cannot say that the testimony was volunteered by the police officers with the idea of circumventing rules of evidence which would not permit its introduction. Nor can we say from the record that the prosecuting attorney attempted to elicit information beyond that indicated by his direct questions. The record indicates that the trial court was fully cognizant of the implications of this situation and carefully admonished the jury that the answers should not be considered in their deliberations. Moreover, from an examination of the record as a whole we cannot say that the trial court was in error in its view that the answers volunteered by the police officers were not prejudicial or would not have changed the outcome of the case.[4]

■ It is next contended that the prosecuting attorney committed prejudicial error by inquiring of defendant and one of the defense witnesses if they had ever been convicted of a crime. This question is permitted by Minn. St. 610.49, which provides:

"Every person convicted of crime shall be a competent witness in any civil or criminal proceeding, but his conviction may be proved for the purpose of affecting the weight of his testimony, either by the record or by his cross-examination, upon which he shall answer any proper question relevant to that inquiry; * * *."

It appears that one of the hazards to which a witness exposes himself in taking the witness stand is to be asked this particular question. Since it is permitted by statute, it cannot be said to be prejudicial. The statute has been construed to require the defendant in a criminal case, as well as any other witness, to answer such an inquiry. State v. Curtis, 39 Minn. 357, 40 N. W. 263; State v. Dale, 159 Minn. 455, 199 N. W. 99. In the Curtis case this court said (39 Minn. 359, 40 N. W. 264):

"The defendant, being examined as a witness in his own behalf, was, on cross-examination, asked if he had been previously convicted of a felony, and his objection to the question was overruled. Section 531 of the Penal Code allows the fact of a witness's previous conviction for crime to be proved, either by the record or by his cross-

---

[4]State v. Hurst, 153 Minn. 525, 193 N. W. 680.

examination, for the purpose of affecting the weight of his testimony. The section makes no exception to this rule, and we cannot see why, under its provisions, the credibility of the defendant as a witness may not be assailed in this way as well as in any other."

We have carefully considered the other objections raised by the defendant. They are without sufficient merit to require discussion.

Affirmed.