PEOPLE *v.* CYBULSKI.

1. CRIMINAL LAW—EVIDENCE—ARTICLES FOUND AT SCENE OF CRIME—
ADMISSIBILITY.

   Articles found at the scene of an offense are admissible in evidence only upon a showing that they are in some way material and relevant to particular facts connected with that offense charged against the defendant.

2. SAME DEMONSTRATIVE EVIDENCE—ADMISSIBILITY.

   Demonstrative evidence is admissible in a prosecution for crime if it is helpful in throwing light upon any material point in issue and has a direct bearing on the issue.

3. SAME—EVIDENCE—IDENTIFIED ARTICLES—ADMISSIBILITY.

   Articles which are properly identified and which tend to show the commission of a crime or the manner in which it was committed, or to elucidate some matter in issue, are admissible in evidence for inspection and observation by the jury.

4. SAME—EVIDENCE—DEMONSTRATIVE EVIDENCE—SIGNS OF INJURY—
STAINS.

   Signs of injury, stains, or defacements in articles offered in evidence in a criminal prosecution must be shown to be attributable to, or connected with, the alleged crime.

5. SAME—EVIDENCE—CHIP OF WOOD—ASSAULT.

   Admission of chip of wood stained with blood of unidentifiable type taken from the floor of a shed is admissible in trial on charge of assault with intent to commit robbery and is not prejudicial to defendant where it is apparent by his own admission that bloodshed occurred in the shed (CL 1948, § 750.88).

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 29 Am Jur 2d, Evidence §§ 769, 771.
[3] 29 Am Jur 2d, Evidence § 774.
[4, 5] 29 Am Jur 2d, Evidence §§ 769, 771, 774, 825, 826.
[6, 7] 46 Am Jur, Robbery § 48.
[8, 9] 58 Am Jur, Witnesses §§ 734, 748, 749.
[10] 53 Am Jur, Trial §§ 463, 488.
[11] 5 Am Jur 2d, Appeal and Error §§ 819, 833, 838.

6. SAME—POSSESSION OF MONEY—ROBBERY—RELEVANCY.

The possession of a quantity of money is in itself no indication that the possessor was the taker of the money in a robbery, but where the denominations of the money found in defendant's possession and the money taken 4 hours earlier closely correspond, the fact of the finding of that specific money would have probative value and be relevant because the money found is fairly marked as identical with the money taken (CL 1948, § 750.88).

7. SAME—ROBBERY—EVIDENCE—MONEY—TIME.

Admission in evidence in trial for assault with intent to commit robbery unarmed of money consisting of 6 ten-dollar bills, 1 five-dollar bill, and 6 one-dollar bills, found in defendant's possession at the time of his arrest 4 hours after complainant was robbed of 7 ten-dollar and 2 five-dollar bills is not error since questions of remoteness are best left to the broad discretion of the trial court, and the interval of time which has expired is a factor for the jury to consider in determining the weight to be given the evidence (CL 1948, § 750.88).

8. SAME—CREDIBILITY OF WITNESSES—PREVIOUS CONVICTION.

Previous conviction of a defendant charged with crime may be shown for the purpose of testing his credibility when he takes the witness stand in his own defense (CLS 1961, § 600.2158).

9. SAME—PREVIOUS CONVICTIONS—IMPEACHMENT.

Records of previous convictions are not admissible for impeachment of a witness where the defendant, as a witness, refuses to answer, or where he denies such collateral matters as his previous convictions (CLS 1961, § 600.2158).

10. SAME—ARGUMENT OF COUNSEL.

Misstatement by prosecutor in closing argument of the number of prior convictions defendant admitted is not so highly prejudicial, under record presented, as to deprive defendant of a fair trial when there was no objection to this misstatement in the closing argument when minor corrections could have been made.

11. APPEAL AND ERROR—VERDICT—SUFFICIENCY OF EVIDENCE.

An appellate court will not upset the findings of a jury where there is sufficient and credible evidence to support the verdict.

Appeal from Branch; Andrews (Mark S.), J. Submitted Division 3 February 6, 1968, at Grand Rapids. (Docket No. 3,729.) Decided April 25, 1968. Leave

to appeal denied September 13, 1968.   See 381 Mich 775.

Stanley J. Cybulski, also known as Shelby J. Pierce, was convicted of assault with intent to commit unarmed robbery.   Defendant appeals.   Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Lowell M. Kelly,* Special Prosecuting Attorney, for the people.

*Thomas C. Megargle,* for defendant.

FITZGERALD, P. J.   Defendant-appellant was convicted by a jury in the Branch county circuit court of assault with intent to commit robbery unarmed[1] in that he allegedly beat, struck, and kicked the complainant in a shed by a railroad track in Quincy, Michigan.   He was sentenced to the State prison for a term of 5 to 15 years.

Briefly, defendant stated that he was molested sexually, then hit with a board by the complainant while he was asleep in the shed following some drinking by both him and complainant, and that he responded to this attack by taking away the board and beating the complainant.   However, the complainant testified that when he received his disability check for $90 in the mail on that day, the defendant was with him and that later on the 2 men walked along the railroad track while drinking beer until they reached the shed, where allegedly the defendant hit complainant with a stick and kicked and stomped him into unconsciousness after stating that he wanted complainant's money.   Defendant was arrested in a bar in Coldwater at 6 p.m., later that same day.

---

[1] CL 1948, § 750.88 (Stat Ann 1962 Rev § 28.283).

Defendant's first 2 issues on appeal concerned the admissibility of certain evidence: (1) Did the trial court err in admitting into evidence, over objection, a chip of wood taken from the floor of the shed, said chip being stained by human blood of unidentifiable type, according to expert testimony? (2) Did the trial court also err in admitting currency consisting of 6 ten-dollar bills, 1 five-dollar bill, and 6 one-dollar bills found in defendant's possession at the time of his arrest at 6 p.m. in Coldwater, when the complainant had 7 ten-dollar bills and 2 five-dollar bills in his possession at 12 o'clock noon in Quincy? We are thus concerned with the relevancy of particular evidence to the facts at issue in this case.

The people argue that for evidence to be admissible as being nonprejudicial to the defendant, it should have some "legitimate tendency" to establish or disprove the fact in controversy (see *Stroh* v. *Hinchman* [1877], 37 Mich 490) and they contend that the discovery of the wood chip stained by human blood at the scene of the alleged assault has such a "legitimate tendency" to establish the fact of an assault. The question arises, however, that since the expert criminologist could not determine the blood type on the sample, can it be said that even if there is a tendency to establish that an assault did occur, did prejudice result since there is allegedly no demonstrated connection between the human blood and any blood shed by the people herein involved?

The law is clear that articles found at the scene of an alleged offense are admitted into evidence only upon a showing that they are in some way material and relevant to particular facts connected with that offense charged against the defendant. See 1 Gillespie, Michigan Criminal Law and Pro-

cedure (2d ed), § 412. It is also apparent that demonstrative evidence is admissible when it is competent, if it tends to throw light upon, and has a direct bearing on, an issue material to the case. See 2 Wharton, Criminal Evidence, § 673, p 612; *People v. Wright* (1891), 89 Mich 70; *People v. Becker* (1942), 300 Mich 562; *People v. Freeman* (1965), 1 Mich App 63. However, the trial courts are continually faced with the problem of applying such general rules to particular circumstances. Thus, herein referring to 22A CJS, Criminal Law, § 709, p 946, we agree with the Supreme Court of the State of Iowa in the case of *State v. Jones* (1943), 233 Iowa 843, 848 (10 NW2d 526, 529):

"The rule is that articles including those found at the scene of the crime, which are properly identified and which tend to show the commission of the crime or the manner in which it was committed, or to elucidate some matter in issue, are admissible in evidence for inspection and observation by the jury."[2]

Also, see 22A CJS, Criminal Law, § 709, p 952:

"Signs of injury, stains, or defacements in articles offered in evidence must be shown to be attributable to, or connected with, the alleged crime."

---

[2] Also, see *State v. Christie* (1952), 243 Iowa 1199 (53 NW2d 887); *White v. State* (1947), 249 Ala 501 (31 So 2d 335) (admit two bottles with unidentifiable human bloodstains found in a trailer where defendant allegedly killed his wife as the stains "tended to give character to and illustrate the testimony". It is noted that the trailer was occupied by the defendant and his wife.); *People v. Sambrano* (1939), 33 Cal App 2d 200 (91 P2d 221) (admit speedometer of defendant's car which had an identifiable spot of untyped blood on it and also admit the seat of the car which had a "dark spot" on it which "could" be blood. There was other evidence tending to show that the use of the car was closely connected with the alleged crime, as was the shed to the act here, and the Court held that "the automobile, including the front seat thereof, was competent evidence. They were employed in the perpetration of the crime".).

The application of the footnoted cases to the case at bar may be somewhat disputed in that the shed was not in the sole possession of the complainant and the defendant at all times, while the trailer in the *White Case* and the automobile in the *Sambrano Case* were owned and solely used by the defendants. The bloodstained wood chip might be said not to be sufficiently connected with the alleged crime because the shed was frequented by the public. We look to related cases in other states for assistance when our State has not provided authority. Thus, we provide pertinent portions of the case of *State* v. *Bennett* (1962), 158 Me 109, 113 (179 A2d 812, 814, 815) where the supreme judicial court of Maine upheld the conviction of the defendant for having carnally known an 11-year-old female child in a "hen nest":

"A wooden board containing a blood stain had been detached by the State from a 'hen nest' or coop and was offered in evidence as a relevant property in the perpetration of the alleged offense."

Defendant objected that there was a lapse of a year since the event the board purportedly evidenced, and he further objected:

"Because the pathologist had only succeeded in confirming a *general grouping of A for the blood comprising the stain* and had been unable to assign any definite age to the blood except an assurance that it was more than a week, because expert testimony revealed that *44% or 45% of the American population has A blood* and *persons other than the prosecutrix had had access to the hen nest.*" (Emphasis supplied.)

Further objections made by the defendant to the introduction of the entire coop are not applicable here. The court continued:

"*The board and its blood stain stood in a milieu
of connected circumstances.* * * * The stain was
of blood group A. The prosecutrix had been deter-
mined by a testifying medical laboratory technician
to possess type A, Rh positive blood. * * * The
hen nest save for the controversial board had al-
ready been admitted in evidence. The prosecutrix
had related that the board had constituted *part of
the plane surface upon which the crime had been
enacted* and had sworn *that her blood had stained*
the board's top side. *The relation of the board to the
trial issue had become by an aggregation of circum-
stances qualified for jury consideration.* That deci-
sion was the well-acquitted duty and responsibility
of the presiding justice." (Emphasis supplied.)

The difference between the present case and the
rationale of the above decisions is apparent in that
the margin of error on the blood type has at least
been reduced by 55% in *Bennett, supra,* where here
remains the possibility of 100% error. Positive
identification of blood type is not as important in
cases such as *White* and *Sambrano* where the blood-
stained article was not in general usage, but was
under the exclusive control of the defendant and few
other people. The defendant in the *Bennett Case*
had daily opportunities to observe and use the hen
coop in his work; thus, the introduction of it and
the bloodstain found therein is relevant to the ac-
cusation of the prosecutrix against the defendant
that the act complained of did in fact occur and that
the coop was the location of the act. It is here ad-
mitted by the defendant that the beating of the
complainant took place in the shed and that blood
of the complainant was shed during the affray.[3] If

[3] See *Commonwealth* v. *Lamoureux* (1965), 348 Mass 390 (204
NE2d 115) (admit untyped bloodstained clothing when other evi-
dence in case could fairly lead to the conclusion that the blood was
that of the victim).

the fact that any beating took place at all were in issue, we might be constrained to exclude the admission of the untyped bloodstain found at a location of general usage.   However, here the wood chip is not so remote or unrelated as to bar its admission as evidence where the character of the act is essential to a determination of the liability of the defendant for an assault.   It is elemental that the charge of assault with intent to commit robbery unarmed includes a charge of assault or assault and battery, and the admission of the stained wood chip was not prejudicial to the defendant where it is apparent by his own admission that bloodshed occurred at his own hands.

A similar test must be applied to test the propriety of the admission of the money found on defendant 4 hours after the beating.   Defendant relies on the holding in *People* v. *Kotek* (1943), 306 Mich 408, wherein the introduction of money seized from Mr. Kotek at his arrest, moments after the robbery of a cafe, was approved, the amount of money exactly coinciding with the amount stolen from the cafe. Defendant here agrees that the immediacy of the seizure of that money was relevant and material to the facts there in issue, but he distinguishes the passage of time in this case and the seizure of a different (although similar) amount of money from that allegedly stolen as creating such remoteness in connection with the charge against him as to prohibit its introduction.   We refer to 1 Wigmore on Evidence (3d ed), § 154, Possession of money to evidence larceny, et cetera:

"The mere possession of a quantity of *money* is in itself no indication that the possessor was the taker of money charged as taken, because in general all money of the same denomination and material is alike.   *  *  *   *But where the denominations of the*

*money found and the money taken correspond in a fairly close way, the fact of the finding of that specific money would have probative value and be relevant,* because the money found is fairly marked as identical with the money taken." (Emphasis supplied.)[4]

To dispose of the contention that a lapse of time would make such evidence too remote to the fact in issue, it is seen that in order to find prohibitive remoteness it must also be determined from the circumstances that the defendant could have disposed of or acquired additional money in another manner during that time, or that he was possessed of that money before the incident which here admittedly occurred. See Wharton, Criminal Evidence (12th ed), § 204.

However, such questions of remoteness are best left to the broad discretion of the trial court, and the interval of time which has expired is a factor for the jury to consider in determining the weight to be given the evidence. See 1 Wharton, *supra,* §§ 149 and 204. Thus, the jury may be informed of the amounts found in defendant's possession as they correspond to the amounts stolen in a "fairly close way", and the period of time which elapsed is not so remote as to find error in submitting the evidence seized at that time to the jury. The relevancy of the evidence has no bearing on the weight to be given it. 1 Wharton, *supra,* § 148.

The third allegation of error presented by defendant is that the trial court erroneously permitted the prosecutor to ask questions of the defendant on cross-examination which implied his guilt as to other offenses not connected with this charge. The record shows that the defendant took the stand on his own

---

[4] Also, see *State* v. *Ball* (Mo 1960), 339 SW2d 783 (91 ALR2d 1042).

behalf, thus permitting the prosecutor to inquire about prior convictions in testing the defendant's credibility. CLS 1961, § 600.2158 (Stat Ann 1962 Rev § 27A.2158); *People* v. *Hoffman* (1965), 1 Mich App 557 (also permitting questions about prior arrests). Defendant was questioned on 16 alleged convictions. The defendant denied one of the alleged convictions, neither admitted or denied 3 others, and admitted 12 convictions. He now contends that questions as to the denied conviction were prejudicial as implying guilt because the prosecutor did not then offer the record of that alleged offense into evidence. By denying one conviction while admitting many others, the defendant has effectively rebutted any prejudicial connotation which might have arisen from the proper questioning of the prosecutor.[5] Any relevant questioning by the prosecution to further challenge the credibility of the defendant as a witness where he, by his own admission, has had previous convictions, is not prejudicial, especially since the defendant denied some of the convictions.

In his closing argument, the prosecutor erroneously misstated the number of prior convictions of defendant actually admitted. Defendant finds this to be highly prejudicial, on appeal to this Court, but we note that he did not object to this misstatement in his closing arguments when minor corrections could have been made, and we do not find the actual misstatement to be so grievously prejudicial that we would now enter his objection for him. See *People*

[5] Contrast *People* v. *Di Paolo* (1962), 366 Mich 394, where the court found prejudice to exist by the failure of the people to introduce any evidence of defendant's alleged conviction in another State after he denied that he was so convicted. Here, defendant admitted 12 convictions, where Di Paolo consistently maintained his innocence in the face of direct contradiction of the principal witness as to any similar crimes committed at any prior time. His credibility was clearly prejudiced, given his consistent denials, where defendant here had impeached his own credibility at least 12 and perhaps 15 additional times.

v. *Hartwick* (1967), 8 Mich App 193; *People* v. *Ridley* (1968), 8 Mich App 549.

The defendant finally urges this Court to find the verdict of the jury contrary to the great weight of the evidence. We have carefully reviewed the testimony offered and refer to our decision in the case of *People* v. *Arither Thomas* (1967), 7 Mich App 103, in holding that we do not upset the findings of a competent jury where there is sufficient and credible evidence to support the verdict.

Defendant repeatedly has attempted to place great weight on his own testimony that he did not immediately flee the village of Quincy following the incident (although he was arrested in another city 6 hours later), such act allegedly showing that "he had nothing to fear from the police", *ergo*, the jury verdict of his guilt was erroneous. We cannot find validity in such reasoning.

Affirmed.

J. H. GILLIS and BOWLES, JJ., concurred.