## STATE v. WILLIAM G. WEST.

173 N. W. (2d) 468.

November 21, 1969—No. 40897.

*Robins & Meshbesher* and *Ronald I. Meshbesher,* for appellant.
*Douglas M. Head,* Attorney General, *Richard H. Kyle,* Solicitor General, *George M. Scott,* County Attorney, and *Henry W. McCarr, Jr.,* Assistant County Attorney, for respondent.

NELSON, JUSTICE.

Defendant appeals from an order denying his motion for a new trial and from a judgment of conviction of burglary and theft. An information charging him with commission of these crimes was filed January 25, 1967.

The evidence upon which the jury returned verdicts of guilty may be summarized as follows: Officers David Simondet and Ronald Pavlock of the Golden Valley Police Department, while on general patrol in their squad car at 3:35 a. m. on the morning of January 16, 1967, were approaching the eastbound lane of U. S. Highway No. 12 from the southernmost roadway of County Road No. 18 on the cloverleaf when they observed a 1966 Pontiac car driving west in the eastbound lane of Highway No. 12. As the car approached in the wrong lane, the patrolmen turned on their red light and followed the vehicle approximately one block, at which time the right front door of the vehicle opened and an object, some 2 feet square, fell out. The patrolmen pursued the vehicle, which subsequently made a turn into the westbound lane. They noticed nothing unusual about the way the driver turned or controlled his car. Finally, half a mile from the point where the officers commenced the "chase," defendant pulled over.

The officers observed that the trunk of defendant's vehicle was open approximately 4 to 5 inches and was held together with either a wire or a rope. There appeared to be a polished cabinet of some type inside the trunk. The officers also noticed an odor of alcohol when talking to defendant and asked him if he had been drinking. He said he had had one beer.

Officer Pavlock directed defendant to get into the squad car, after which, according to his testimony—

"* * * I then took my flashlight and searched inside the car, observed in the car. There was some brown wrapping paper on the back seat. I looked under the front seat, and there was a pair of gloves and a pipe wrench under there. I then closed the door of the vehicle, walked back to the squad car, wrote down what I observed on a pad of paper letting Officer Simondet know what I had observed."

Another officer who was driving east on Highway No. 12 observed a television set lying alongside the roadway. He retrieved the set and took it to the place where defendant had been apprehended. Defendant was placed under arrest and given a Miranda card. Thereupon, the arresting officers searched defendant's automobile. The trunk contained a colored television set and a mall with a shortened handle. Two screwdrivers, one with a bent tip used for entry and termed "a latch picking screwdriver," and two walkie-talkies were found in the glove compartment.

Upon further search the officers found a pipe wrench under the front seat, a pair of black gloves, and two more screwdrivers. Following this, Sergeant Melvin Kilbo commenced a search of the general vicinity and found that the door of Northern States Radio Service, Inc., a television and radio dealership located in the shopping center near Turner's crossroads, "came open in his hands." Tire tracks could be seen "at an angle to the front entrance of the store." There were marks around the lock assembly of the door, making it apparent that forcible entry had been made into the store. A mat was found at the entrance and

marks across the floor, indicating that objects had been dragged across the floor with the mat. A pry bar was also discovered lying on a bench just outside the entrance.

William Forsyth, part owner and secretary-treasurer of Northern States Radio Service, Inc., was called and upon arrival at the store determined that two television sets were missing.

Defendant testified that he attended a party with several friends on the evening of January 15, 1967, at Art Song's Tea House in Hopkins, and that he was drinking continually throughout the evening. He declared that he could not recall when he left the party, adding that he knew he was intoxicated. He said the next thing he recalled was a truck coming toward him. Realizing he was on the wrong side of the highway and noticing a red light behind him, he turned over to the right side of the highway rather than stop on the wrong side. Defendant insisted that he had no recollection of a burglary.

Two friends of defendant testified in his behalf, stating that they were with him at the party on the night of January 15, 1967; that he "was drunk" but refused their offers of a ride home; that the party lasted until about 2 or 3 a. m.; and that they left at the same time as defendant. One of them described defendant as "very drunk," stating that he could "hardly walk." The other said defendant left the party at 2:30 a. m. in a state of intoxication "[a]s bad as I've ever seen him." This witness said that defendant "could hardly even talk."

The arresting officers, however, who were experienced in arresting intoxicated persons, had a different view of defendant's state of sobriety. One of them noticed a strong odor of alcohol coming from defendant and the officer candidly added that he did not believe defendant's scene-of-apprehension claim that he "had one beer to drink." Nevertheless, this officer stated on redirect that he observed nothing unusual about defendant's appearance, his walk, or his talk—that he walked directly to the squad car after turning across the highway and coming to a stop.

The other officer agreed that defendant did not appear to be intoxicated.

On cross-examination defendant was questioned about a prior burglary conviction occurring some 4 years earlier. Upon objection, the following took place at the bench:

"MR. MESHBESHER [counsel for defendant]: I would request the Court for an order forbidding the County Attorney from asking any questions with respect to prior convictions on the ground that the sole purpose of this inquiry is to prejudice the Jury. It has no probative value in this matter. There is a prior conviction for the crime of burglary some three, four years ago, but there's actually no probative value for this testimony. It's offered solely for the purpose of allowing the Jury to draw inference that— from the fact that once convicted of a burglary must indicate that he was again guilty of this particular charge. And I think any probative value with regard to so-called credibility is completely outweighed by the highly prejudicial and inflammatory nature of the testimony involved in this case, and I think it should be forbidden from testimony from this Court.

"THE COURT: What is the purpose of the testimony, credibility?

"MR. RAPOPORT [assistant county attorney]: Oh, definitely, Your Honor.

"THE COURT: Is that the purpose of it?

"MR. RAPOPORT: Similar crime.

"THE COURT: No, no. Credibility?

"MR. RAPOPORT: Credibility, yes.

"THE COURT: Credibility as a witness?

"MR. RAPOPORT: Oh, definitely, sir. We have a very unusual case here.

"THE COURT: Well, I know it, but that's the only legitimate purpose of this—

"MR. RAPOPORT: Well, it would definitely be for the credibility of this witness' testimony.

"MR. MESHBESHER: I think the County Attorney also men-

tioned something about similar crime, and that's what I'm afraid of.

"THE COURT: Well, he has—

"MR. RAPOPORT: I have a case here.

"THE COURT: Just a minute now. It is the Court's understanding that they do have the right to ask if you have been convicted of a crime going to the question of credibility. It is also the law, as the Court understands it, that they have the right to say, 'What was that crime?' "

Defendant's objection was overruled. The court's instructions to the jury included the following language:

"* * * In evaluating testimony, ladies and gentlemen, and deciding the believability and the weight to be given to testimony, you may consider evidence that the witness has been convicted of a crime. In doing so, you may consider whether the kind of crime committed indicates the likelihood of his telling or not telling the truth. This evidence, ladies and gentlemen, may be considered by you only for the purpose of testing the believability and the weight of the witness' testimony and for no other purpose. In other words, this defendant is only on trial in this case for the crimes charged in this particular Information. But this testimony as to the fact that he has been convicted of other crimes is limited solely to the purpose as to how it may affect his credibility as a witness in this particular case."

Following the prosecuting attorney's closing argument to the jury, defendant moved for a mistrial based on prejudice because the prosecutor, defendant claims, continually expressed his own viewpoint as to the guilt of defendant rather than directing his argument to the evidence admitted and what that evidence in fact proved. The motion for a mistrial was denied. The jury, after deliberating, convicted defendant on both counts.

The issues raised by defendant on this appeal appear to be as follows: (1) Can a defendant in a criminal case, testifying on his own behalf, be asked on cross-examination about the fact and

nature of prior criminal convictions without the state's having first obtained a ruling of the trial judge permitting the questions? (2) Were the assistant county attorney's closing statements to the jury so prejudicial as to require a reversal?

1. Defendant argues that the question of whether a prior conviction should be admitted for impeachment of the accused should be left to the discretion of the trial judge and that in this case he erred in admitting it because the probative value of the prior conviction was outweighed by its prejudicial effect.

The common-law disqualification of witnesses who have been convicted of treason, a felony, or a misdemeanor involving dishonesty—the so-called "infamous crimes"—has been abrogated in most states by statutes allowing prior convictions to be used as grounds for impeachment of credibility. However, the definitions of disqualifying crimes are not very exact. Some state courts limit the crimes to felonies. Others interpret the statutes to include felonies and misdemeanors—some requiring the misdemeanors, at least, to be those involving moral turpitude. See, McCormick, Evidence, § 43.

The relevant Minnesota statute, Minn. St. 595.07, provides:

"Every person convicted of crime shall be a competent witness in any civil or criminal proceeding, but his conviction may be proved for the purpose of affecting the weight of his testimony, either by the record or by his cross-examination, upon which he shall answer any proper question relevant to that inquiry; and the party cross-examining shall not be concluded by his answer thereto."

Before entering into a discussion of the Minnesota law on the subject, two definitional aspects should be pointed out. One is that the word "may" in the foregoing statute does not refer, as defendant argues, to the discretion of the trial judge but rather to the discretion given to counsel for the prosecution to determine whether to bring before the jury evidence that the witness has done something criminally wrong, resulting in a conviction. The

statute has been construed to require the defendant in a criminal case, as well as any other witnesses, to answer the inquiry by counsel. See, State v. Markuson, 261 Minn. 515, 113 N. W. (2d) 346. The second is that the word "conviction" as used in the statute includes a plea of guilty as well as a finding of guilty. See, Warren v. Marsh, 215 Minn. 615, 11 N. W. (2d) 528.

This court has consistently adhered to the ruling that § 595.07 applies to all crimes—felonies, gross misdemeanors, and misdemeanors—regardless of whether or not the crime is one which affects the weight of the witness' testimony. See, Thompson v. Bankers Mutual Cas. Ins. Co. 128 Minn. 474, 151 N. W. 180; State v. Sauer, 42 Minn. 258, 44 N. W. 115; Brase v. Williams Sanatorium, 192 Minn. 304, 256 N. W. 176. The rationale of these holdings is that if a witness has committed a crime the jury should have the right to decide whether that person might also be untrustworthy or immoral when it comes to testifying before a court, whether it be in his own behalf or as a witness in behalf of someone else.

There has been a recent trend in one Federal court toward adopting the discretionary rule advocated by counsel for defendant. In Davis v. United States, 133 App. D. C. 167, 170, 409 F. (2d) 453, 456, the court stated that "prior criminal convictions are not to be automatically received into evidence for purposes of impeachment, and may be excluded by the trial judge in the exercise of his discretion." That court further stated (133 App. D. C. 170, 409 F. [2d] 456):

"* * * [T]he sound exercise of discretion should take into account the kind of conviction offered as impeachment, and that a distinction is to be drawn between acts reflecting on honesty as contrasted with acts of violence, which may result from a combative nature, etc., having little direct bearing on honesty and veracity."

See, also, Brown v. United States, 125 App. D. C. 220, 370 F. (2d) 242; Luck v. United States, 121 App. D. C. 151, 348 F. (2d) 763; Gordon v. United States, 127 App. D. C. 343, 383 F. (2d) 936.

In accord with the foregoing approach, Rule 21 of the Uniform Rules of Evidence proposed by the National Conference of Commissioners on Uniform State Laws permits evidence of a criminal conviction of a witness to attack his credibility only where the crime involved "dishonesty or false statement."

According to McCormick, there is merit to this trend. See, McCormick, Evidence, § 43, p. 94, wherein it is stated:

"* * * On balance it seems that to permit * * * one accused of a crime to tell his story without incurring the overwhelming prejudice likely to ensue from disclosing past convictions, is a more just, humane and expedient solution than the prevailing practice."

In one recent case this court used language suggesting recognition of *discretionary allowance* of questions regarding prior convictions. In State v. Olson, 279 Minn. 166, 156 N. W. (2d) 89, this court reversed a conviction of rape because the cross-examination of the defendant as to an assault and battery conviction elicited evidence about the latter conviction that necessarily aroused local animosity. There the court stated (279 Minn. 169, 156 N. W. [2d] 91):

"Inquiry concerning the prior conviction was permissible, if at all, on the theory that a prior conviction of a felony is evidence that a defendant's testimony in court is unreliable. *It can be legitimately argued that a prior conviction of assault and battery is unrelated to the question of whether a defendant is likely to be a perjurer.*" (Italics supplied.)

However, under the plain language of Minn. St. 595.07 the current law in this state remains that the prosecutor has a right to cross-examine regarding the fact of conviction, the nature of the offense, and the identity of the defendant. Only questions relating to the details of the prior crime which are so improper that prejudice results in the minds of the jurors require a reversal. Thus, even though this court may find that certain questions are improper, a new trial will not be granted if on the basis of the

entire record they are not prejudicial. See, State v. Norgaard, 272 Minn. 48, 136 N. W. (2d) 628.

In the instant case the details of the prior conviction were not elicited by the assistant county attorney on cross-examination. It appears from the record that the only things inquired into were the fact and nature of the previous conviction, thus creating no prejudice according to the Norgaard rationale. Furthermore, the record in the instant case so overwhelmingly establishes the guilt of defendant that even though improper questions had been asked regarding the prior conviction, no prejudice requiring a reversal would have been likely to arise in the minds of the jurors. While it may be argued that jurors cannot fully comprehend instructions that proof of a prior conviction is admissible under § 595.07 only for the purpose of affecting the weight of a witness' testimony, the trial court's instructions on this point were clear and correct.

The members of this court have noted and given some attention to the recent trend of leaving to the trial court the question of whether the particular conviction raised against defendant as a witness in his own behalf substantially affects his credibility. It is our suggestion, however, that revising § 595.07 to conform to the emerging state of the law should be left to the legislature. It is not for the courts to make, amend, or change the statutory law, but only to apply it. If its language embodies a definite meaning which involves no absurdity or contradiction, the statute is its own best expositor. City of St. Louis Park v. King, 246 Minn. 422, 75 N. W. (2d) 487.[1]

---

[1] For other cases bearing upon the use of prior convictions for impeachment purposes, see People v. Kelly, 261 Cal. App. (2d) 708, 68 Cal. Rptr. 337; People v. Palmeri, 58 Misc. (2d) 288, 295 N. Y. S. (2d) 128; People v. Cybulski, 11 Mich. App. 244, 160 N. W. (2d) 764; State v. Bowen, 104 Ariz. 138, 449 P. (2d) 603; State v. Weaver, 3 N. C. App. 439, 165 S. E. (2d) 15; Montgomery v. United States (8 Cir.) 403 F. (2d) 605; State v. Hawthorne, 49 N. J. 130, 228 A. (2d) 682. See, also, Comment, 12 St. Louis U. L. J. 277, 284.

2. Defendant advances as grounds for a new trial the allegedly improper closing argument of the prosecutor. However, the evidence in this case overwhelmingly establishes defendant's guilt; defendant makes no claim of innocence in this court; nor does he challenge the sufficiency of the state's case. Since it appears that the weight of the evidence is such that the defendant would have been found guilty regardless of the existence of an improper argument, a new trial will not be granted on that ground. See, Note, 43 Minn. L. Rev. 545. Cf. State v. Jones, 266 Minn. 523, 124 N. W. (2d) 727, for a case involving a reversal.

Affirmed.

OTIS, JUSTICE (dissenting).

I concur in the result, only because of peculiar circumstances which require an affirmance in this case. However, I vigorously dissent from that part of the opinion which purports to deny the court in future cases the right to reassess the validity of Minn. St. 595.07 when the proper occasion arises.

To perpetuate the myth that the disclosure of defendant's prior convictions has no effect on a jury beyond reflecting unfavorably on his credibility is, in my opinion, an abdication of judicial responsibility.

It is our duty to guarantee defendant a fair trial. The legislature cannot constitutionally enact rules of evidence which deprive defendant of that right. Nor are we obliged to stand mute in deference to legislative comity when a majority of the court agrees that a statutory rule is manifestly prejudicial to the rights of an accused.

I cannot condone in perpetuity a law which so obviously and effectively denies defendant an opportunity to profess his innocence. In my opinion, the statute is simply a vestige of an era when the accused was prohibited from testifying on his own behalf for any purpose.

I would reserve the right to review the matter in any future case where the application of the statute would frustrate the ends of justice.

MR. JUSTICE ROGOSHESKE took no part in the consideration or decision of this case.