PEOPLE *v.* IRON

1. EVIDENCE—ADMISSIBILITY—FOUNDATION.

A foundation was laid for the admission of a Norelco electric
razor into evidence in a prosecution for murder where two
witnesses testified that decedent's husband owned such a razor
which was missing after the killing, these witnesses identified
the razor in evidence as being identical to that owned by
decedent's husband, and another witness testified that the
exhibit was pawned with him for three dollars shortly after
the murder occurred (MCLA § 750.316).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence § 771.
[2] 29 Am Jur 2d, Evidence §§ 227–230, 266.
 30 Am Jur 2d, Evidence § 1091.
[3] 5 Am Jur 2d, Appeal and Error § 894.
[4] 29 Am Jur 2d, Evidence § 411 *et seq.*
 47 Am Jur, Searches and Seizures § 19.
 Fingerprints, palm prints, or bare footprints as evidence. 28 ALR
 2d 1115.
[5] 21 Am Jur 2d, Criminal Law §§ 368, 369.
 Fingerprints, palm prints, or bare footprints as evidence. 28
 ALR2d 1115.
[6] 30 Am Jur 2d, Evidence §§ 1080 *et seq.*, 1144.
 40 Am Jur 2d, Homicide §§ 45, 425 *et seq.*

2. EVIDENCE—CIRCUMSTANTIAL EVIDENCE—INFERENCES.

Well authenticated circumstantial evidence can be more positive than direct evidence and an inference of guilt drawn from circumstantial evidence is proper.

3. CRIMINAL LAW—INSTRUCTIONS TO JURY—REVIEW.

Jury instructions on appellate review must be read in their entirety and not solely by isolated sentences or sections.

4. SEARCHES AND SEIZURES—FINGERPRINTS—UNRELATED OFFENSES—EVIDENCE—ADMISSIBILITY.

Evidence produced by a search and seizure incident to a lawful arrest is admissible in a prosecution for an unrelated offense; hence, assuming that fingerprinting constitutes a search and seizure, defendant's fingerprints taken incident to his arrest and incarceration on another charge, would not make the prints inadmissible at trial for the instant crime.

5. CRIMINAL LAW—EVIDENCE—POLICE INVESTIGATION—FINGERPRINT RECORDS.

Police may properly check evidence obtained from a current criminal investigation against earlier fingerprint records in an attempt to find the perpetrator of the crime.

6. HOMICIDE—FIRST-DEGREE MURDER—SUFFICIENCY OF EVIDENCE.

Evidence that defendant's fingerprints were found at the scene of the crime and that several items were missing from the home of the decedent, among them a shotgun and a Norelco electric razor, that defendant was seen with a razor and a shotgun shortly after the crime occurred, and that defendant pawned the razor was sufficient to support a verdict that defendant was guilty of first-degree murder beyond a reasonable doubt (MCLA § 750.316).

Appeal from Calhoun, Ronald M. Ryan, J. Submitted Division 3 June 2, 1970, at Grand Rapids. (Docket No. 7,988.) Decided August 26, 1970. Leave to appeal denied December 2, 1970. 384 Mich 786.

Elmer Iron, Jr., was convicted of first-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *John M. Jereck,* Prosecuting Attorney, for the people.

*Chris T. Christ,* for defendant.

Before: T. M. Burns, P. J., and Fitzgerald and Byrns,* JJ.

Byrns, J. On August 8, 1968 the defendant Elmer Iron, Jr., was convicted by a jury in the Circuit Court for the County of Calhoun of the crime of murder in violation of MCLA § 750.316 (Stat Ann 1964 Rev § 28.548) and was sentenced to life imprisonment. Defendant then filed a motion for a new trial which was denied on September 23, 1968. Defendant now appeals as of right to this Court.

On September 22, 1967, during the early morning hours, Carl and Effie Birdzell were brutally beaten in their home located in Battle Creek. Mrs. Birdzell died later the same day. Carl Birdzell survived the beating, but died of unrelated causes shortly before the trial.

After Mr. and Mrs. Birdzell had been removed by an ambulance, Officer Alan Toff of the Battle Creek Police Department discovered a chrome fingernail clipper which was somehow wedged into a window frame near the rear of the Birdzell residence. The screen had been removed from the window. Officer Toff observed a latent fingerprint on one side of the clipper. A state expert witness testified that the print belonged to the defendant Elmer Iron, Jr.

The interior of the Birdzell home was in complete disorder with papers, books, and various articles strewn about the room. Among these various articles was a wooden jewelry box which belonged to Mrs. Birdzell. Fingerprints were also discovered on the back of this box. Another state's expert witness, Officer Paul Barbant of the Michigan State Police, testified that the print on the box belonged

---

* Circuit judge, sitting on the Court of Appeals by assignment.

to the defendant, Elmer Iron, Jr. There is no question raised by the defendant in regard to the validity of the identifications of the prints by the state's expert witnesses.

Mrs. Betty Golyar, the daughter of the Birdzells and a witness for the state, testified that as a result of her investigation at her parents' home following the attack, among the items missing from the home were her father's Norelco electric razor and a double-barreled shotgun. The electric razor had been purchased by a neighbor, Dorothy Allen, for Mr. Birdzell a short time before the beatings took place.

At the trial Mrs. Allen identified a razor, which was offered into evidence by the state, as being identical to the razor she had purchased for Mr. Birdzell. It is clear, however, that the witness could not identify the razor as being exactly the same razor. Mrs. Golyar also identified the razor as being identical to the one taken from the deceased's premises.

Mr. James Whitehurst, another state's witness, testified that the razor in question was given to him to hold by the defendant in exchange for three dollars. Whitehurst also testified that the defendant attempted to "pawn" a double-barreled shotgun with him for five dollars.

After the jury had been fully instructed and had retired to deliberate on the guilt or innocence of the defendant, they requested further instructions. After being further instructed they once again retired to deliberate and reached a verdict of guilty of first degree murder.

The defendant, in his appeal, claims various errors.

1. Defendant objects to the admission of the electric razor claiming that no foundation for its admis-

sion existed and that an unfair or prejudicial inference linking him to the crime resulted.

Such claims ignore the fact that two witnesses testified that the decedent's husband owned a Norelco electric razor which was missing after the killing. These witnesses identified the razor in evidence as being identical to that owned by the decedent's husband. Another witness testified that the exhibit was pawned with him for three dollars shortly after the crime occurred. The same witness said that the defendant also attempted to pawn a double-barreled shotgun with him for five dollars.

While the two witnesses could not positively identify the electric razor as the razor owned by the decedent's husband, the circumstances, along with other evidence noted in this opinion, were sufficient to permit its introduction, leaving the evidentiary weight of the exhibit to the jury.

In view of the witnesses' testimony, it cannot be said that a proper foundation was not laid for admission of the razor. It is not necessary to prove positively that the razor admitted into evidence was the very same razor which belonged to Mr. Birdzell. *People* v. *Cybulski* (1968), 11 Mich App 244, 251. While the *Cybulski* case dealt with the defendant's possession of money, the issue is the same here. The state was not required to show that the money possessed by the defendant was the same money stolen from the complainant. The Court found that where the money recovered corresponded in amount and denominations to that stolen from the victim then that was sufficient to allow its introduction. See also, *People* v. *Evans* (1966), 3 Mich App 1, 8, where bottles of liquor found in the possession of the defendant upon his arrest were admitted into evidence at his trial for the offense of breaking and entering a private club. There was no direct proof

that the bottles had been owned by the club. However, the trial court admitted them and commented that their probative force was for the jury to determine. In the instant case the court made a similar cautionary statement to the jury.

Therefore, in view of the testimony of the witnesses on the similarity of the razor to the one owned by the victim's husband, and that the defendant pawned the razor a short time after the incident occurred, it cannot be said that no foundation was laid for its admission into evidence. See also *People* v. *Best* (1922), 218 Mich 141; *People* v. *Gerndt* (1928), 244 Mich 622.

In regard to the defendant's assertion that admission of the razor allows the jury to base an inference on an inference, there are many cases on point which are contrary to the defendant's position. *People* v. *Grabowski* (1968), 12 Mich App 672; *Shutt* v. *State* (1954), 233 Ind 169 (177 NE2d 892) (cited by *Grabowski, supra*); *People* v. *Eaves* (1966), 4 Mich App 457.

Circumstantial evidence if well authenticated can be more positive than direct evidence. *People* v. *Martina* (1956), 140 Cal App 2d 17 (294 P2d 1015); *State* v. *Johnson* (1960), 11 Wis 2d 130 (104 NW2d 379). In the instant case, the defendant's possession of the razor was circumstantial evidence of his complicity in the commission of the crime. His possession of a razor was not inferential, it was actual. That the razor the defendant possessed was exactly like the one owned by the decedent's husband is also fact and not an inference. The defendant's guilt was an inference drawn from these and other facts. The drawing of an inference of guilt from circumstantial evidence is proper. *People* v. *Eaves, supra*.

2. The defendant, on appeal, also objects that in giving supplemental instructions, the trial court

gave undue emphasis to the testimony of the state's expert witnesses.

The objected-to instruction is:

"Now in determining these questions, you have to rely upon your recollection of the testimony of the witnesses, including the testimony of the expert witnesses on fingerprints. All of the testimony of the witnesses has to be considered, it is for you to determine what credibility you are to give to the testimony of the witnesses and when you, for instance, consider the testimony of the expert witnesses on fingerprinting, you have to rely upon your recollection of that testimony. You determine what credibility you are to give to that testimony, and of course, in considering the testimony, you have the exhibits to refer to."

The defendant is seizing one paragraph out of five pages of the trial court's supplemental instruction to the jury and consequently ignoring the balance as well as the original jury instructions given by the court to which the defendant in this appeal makes no objection.

The defendant ignores what the court told the jury in the supplemental instructions:

*"It is not proper for the court to attempt to summarize in any way, or outline the evidence or testimony, and so I would not be able to do that.* The jurors have to rely upon their own recollection of the testimony."* (Emphasis added.)

Jury instructions on appellate review must be read in their entirety and not solely by isolated sentences or sections. *People* v. *Dye* (1959), 356 Mich 271, 279. The total charge plus the supplemental instruction fully and fairly informed the jury of the applicable law. There was no undue emphasis by the court of the expert testimony. We find no reversible error.

3. The defendant claims reversible error because while confined in jail at Marshall, Michigan, awaiting a charge of rape (not related to this crime), he was fingerprinted on October 26, 1967, which he claims was done by deception to get his prints for study in the present murder case.

On October 27, 1967, he was charged with the murder of Mrs. Birdzell and again fingerprinted, this time at Battle Creek, Michigan. It was the fingerprints taken on October 27, 1967, following the arrest for the Birdzell murder which were introduced in evidence and used in testimony by the state's expert witnesses and not the October 26, 1967 fingerprints.

There is no evidence from the record below which indicates that any deceptive practices ever took place. The only evidence which we have on appeal is that the defendant was fingerprinted on two consecutive days; the first time was in the county jail at Marshall, Michigan, where he was held on a charge of rape, and the second time was when he was taken to Battle Creek and formally charged with the murder of Effie Birdzell. Also, and more important, there is no evidence of any relationship between the two fingerprinting sessions, *i.e.*, there is nothing to indicate that the first set of prints led to the arrest of the defendant for murder.

The defendant is correct in the assertion that imprisonment for an unrelated offense does not strip a defendant of his constitutional protection against unreasonable searches and seizures. *People* v. *Carr* (1963), 370 Mich 251; *People* v. *Overall* (1967), 7 Mich App 153. However, by making this statement he merely begs the question. Assuming the defendant was lawfully arrested for the first offense (there is nothing to indicate the contrary), it was perfectly proper for the police to take his

fingerprints incident to that arrest. *United States* v. *Iacullo* (CA 7, 1955), 226 F2d 788, *cert. den.* 350 US 966 (76 S Ct 435, 100 L Ed 839); *Napolitano* v. *United States* (CA 1, 1965), 340 F2d 313; see generally, Anno: 16 L Ed 2d 1343, § 6.

Even if the taking of fingerprints were a search and seizure, the defendant still is not helped in his argument. The law is clear that any evidence produced by a search and seizure incident to a lawful arrest for a particular offense is admissible in a prosecution for an unrelated offense. *Ray* v. *United States* (CA 9, 1969), 412 F2d 1052, 1054; *Wellman* v. *United States* (CA 5, 1969), 414 F2d 263, 265; *Commonwealth* v. *Chilengarian* (1969), 215 Pa Super 112, 113 (257 A2d 279, 280). The *Chilengarian* case pointedly observed:

"Since the officers were acting consistent with the warrant authorizing the search of the car for narcotics they were not required to ignore evidence of another crime." ( at p 113.)

The analogy which can be made to the instant case is apparent. Merely because the fingerprints taken incident to the defendant's arrest and incarceration for rape may have been used for the purpose of implicating the defendant on the present murder charge does not make the prints inadmissible at the trial for murder. Fingerprints, taken in the course of criminal arrests or investigations, exist on hundreds of thousands if not millions of persons. There is no law we know of that would prevent the police from checking evidence obtained during a current criminal investigation against earlier fingerprint records in an attempt to find the person responsible for the crime. The defendant also argues that his incarceration on the rape charge was illegal because it was not authorized by a judicial officer. Again,

the defendant makes his argument hinge on an assertion which is not supported by the record. Therefore, there is no real purpose in pursuing the argument. There is no evidence in the record concerning the defendant's incarceration in the Marshall County Jail other than the fact that he was so imprisoned, and nothing to show his incarceration was not authorized by a judicial officer. As noted, the fingerprints taken on the rape arrest were not used in evidence in the unrelated murder case. *Davis* v. *Mississippi* (1969), 394 US 721 (89 S Ct 1394, 22 L Ed 2d 676) is not in point with this case nor is it authority here. The remaining contentions by the defendant concerning the fingerprints similarly hinge on facts asserted which do not appear in the record.

4. The defendant's final claim is that the evidence adduced at the trial was not sufficient to support a finding of guilt beyond a reasonable doubt.

A brief review of the evidence reveals that the defendant's fingerprints were found at the scene of the crime in two places, at a place of possible entrance and on decedent's jewelry box inside of the house. The evidence also reveals that several items were missing from the home of the decedent, among them a double-barreled shotgun and a Norelco electric razor. Witnesses testified for the state that the defendant was seen with a razor and a shotgun shortly after the crime occurred. The razor which the defendant had pawned with one of the witnesses was introduced into evidence by the state and identified by the other witnesses as being identical to the one owned by the decedent's husband. From the foregoing, the jury had sufficient evidence to support its verdict that the defendant was guilty beyond a reasonable doubt.

The law is clear:

"In reviewing a jury determination in a criminal appeal, this Court must tread lightly, as the jury viewed the witnesses, heard all of the testimony, and was in a superior position to determine the credibility of all that passed before it." *People* v. *Eaves* (1966), 4 Mich App 457, 466; *People* v. *Williams* (1968), 11 Mich App 62, 68.

Affirmed.
All concurred.