STATE v. LEONARD HANKINS, ALIAS OWEN LEWIS.[1]

February 1, 1935.

No. 29,732.

John J. Kelly and A. M. Cary, for appellant.

Harry H. Peterson, Attorney General, Roy C. Frank, Assistant Attorney General, Ed J. Goff, County Attorney, and William G. Compton, Assistant County Attorney, for the state.

[1]Reported in 258 N. W. 578.

Stone, Justice.

Convicted of murder in the first degree, defendant appeals from the order denying his motion for a new trial.

The Third Northwestern National Bank is located between Central and East Hennepin avenues where they cross Fifth street southeast, in Minneapolis. About 2:30 p. m. December 16, 1932, the bank was held up by armed robbers. Two policemen, Ira L. Evans and Leo Gorski, there met death in the line of duty. They arrived at the bank in answer to a radio alarm and were killed by gunfire of the bandits. The conviction of defendant was upon the theory, with supporting evidence, that he was one of them.

The direct evidence for the state includes the testimony of several witnesses, present at the time, who identified defendant. At least three are positive in their identification. After the holdup the robbers escaped via Como Park in St. Paul, where their Lincoln sedan, disabled, was found shortly after. J. H. Peterson, a witness for the state, testified to having seen several men transferring a white sack from the Lincoln to a smaller car. He was passing in his own automobile within four or five feet of the smaller car and ten to fifteen feet of the other men. His identification of defendant, as the man "carrying that bag," is positive. "His face," testified Mr. Peterson, "was right at me * * * as I come [sic] up." Cross-examination much strengthened his direct testimony. He testified: "The face is what I got * * * he [defendant] looked right at me." He said further that the defendant warned him to "keep going, and don't look back."

One witness who is most positive of defendant's identity is Mr. Hesselroth, a teller in the bank. He testified that he met defendant upon retreating from his cage under the gun of a bandit in front and that as he faced defendant the latter felled him with a blow of his gun.

Of course witnesses who identified defendant did not agree in all details. But their disagreement is no more than that to be expected when several people attempt honestly to relate so tragic and disturbing an occurrence, their observation of which was made under peculiarly harassing circumstances. All were in danger.

Absence of agreement, even on important details, is not surprising. It would be surprising if there were substantial agreement at all points. Some minds have powers of observation which are photographic, not only in perception but also in retention. Others are not so well endowed. On this record, there is no question that the case for the state would be unimpeachable if the question were alone as to the sufficiency of the identification of defendant.

There is circumstantial evidence cogently corroborating the direct. On the record, it must be taken as fact that two participants in the crime were Lawrence DeVol, *alias* Barton, and one Newbern. DeVol had one brother called Clarence Colton and another, living in Minneapolis, under the *alias* of "Doc Stone." Lawrence DeVol was arrested at an apartment in St. Paul early the morning after the robbery. His brother Clarence appeared there shortly afterwards. Newbern and this defendant were arrested in the room of Doc Stone in Minneapolis on the Sunday morning following the crime. Newbern was identified by witnesses as one of the bandits. DeVol pleaded guilty, as one of them, to the crime of murder and was a witness for defendant at the trial. There is other evidence suggesting a well established if not long connection between defendant, the DeVols, and Newbern. In Lawrence DeVol's possession when arrested was found much of the money and securities taken from the bank. He also had a Colt 45-caliber automatic pistol fitted with special aluminum grips (the standard weapon has checkered walnut grips) and also a magazine, almost twice the length of the standard one, which converted the weapon from one capable of nine shots without reloading to one which would fire 18. When defendant was arrested there was found on him a replica of the weapon carried by DeVol, a 45-caliber Colt automatic fitted with the same aluminum grips. He did not have on him any of the so-called multiple shot magazines.

A significant circumstance is that the factory numbers on the right side of the receiver of the DeVol and Hankins weapons had been chiseled off. An expert witness for the state testified without contradiction that the work on both weapons was done, not only in the same peculiar manner, but also by the same tool.

■ In argument here the prosecuting attorneys are charged with misconduct in their argument to the jury. Those charges are of such nature that, if substantiated by the record, they might well lead to a new trial. But the record does not bear out the argument for the defense on this point. What was said to the jury on behalf of the state does not appear, either by record of the argument or by incorporation in the settled case of the objectionable part of it, the objections thereto, and exceptions taken. So we cannot know what, if any, basis there is for the charge of misconduct. In that situation error is not made to appear.

The prosecution is also charged with misconduct in examination of one Noe, the principal alibi witness for defendant. Mr. Goff, the county attorney, asked him questions, it is said, with discrediting implications unfounded in fact and for the purpose of extra-legal impeachment. Noe, having admitted that he once resided at Sioux City, was asked whether there he knew a man "they called Sioux City Whitey." After he had answered in the negative, the question was objected to as immaterial. The objection was overruled. Mr. Goff promised that he would "connect it up." He never did so. There was no motion to strike. Later, Noe was asked whether he had lived at the courthouse in St. Paul for any time, the implication being that he was there under arrest and in jail. Again, after an emphatic negative answer, there was objection, and this time it was directed at the alleged improper method of impeachment being followed by the prosecution. It should be said, however, that the context indicates that the cross-examiner supposed, or at least tried to bring out, that Noe had been in jail in St. Paul at the time defendant was. That effort, if based upon information believed by the prosecution, was not improper because it was important to show Noe's previous acquaintance or association, if any, with defendant, whom he claimed not to have known more than two weeks before the bank robbery. The effort was unsuccessful.

There was no motion to strike any of the cross-examination and no request, then or afterwards, that the jury be directed to disregard it or any of it. All too familiar is the habit of witnesses, for which most of them are not to be blamed, of answering objec-

tionable questions before there is objection, or even opportunity therefor. If the question is objectionable, counsel should not be so deprived of the right to object and get a ruling. But if the answer is in the record ahead of the objection and ruling, proper practice requires a motion to strike if error is to be assigned. In view of Noe's testimony on direct examination, the county attorney was properly allowed a wide latitude of cross-examination. He did not, as he promised, "connect up" the subject matter of some of his questions. Failing in that, he himself should have been the first to acknowledge his failure and ask that the record be corrected accordingly. Here there was no motion, even from defendant, to strike the objectionable evidence. But we have examined all of it and consider that it is not susceptible of the view that defendant suffered prejudice. As far as they had discrediting implications, the questions were answered negatively by the witness. (He did admit being in jail in St. Paul over a week-end but averred that no charges were filed against him and that he did not meet Hankins there.) Then there is the important fact, considered more at length later, that, in so far as Noe's testimony tended to establish an alibi, it was utterly discredited by a statement of defendant himself which was in evidence.

■ Defendant, as a witness for himself, admitted possession at the time of his arrest of the 45-caliber Colt automatic, with its unusual grips, and the factory serial number erased. He told a story which has the earmarks of home manufacture, that it was given him by one Springer the evening before his arrest. By way of laying foundation for impeachment he was asked on cross-examination whether he had not had the same or a similar gun previously and on certain specified occasions. His answers were flat denials. He did admit previous ownership and possession of other pistols and revolvers but denied that he had ever owned a gun just like the one in question. He asserted that his purpose in carrying guns was to protect the money on his person. The state, in rebuttal, called witnesses who testified that at the times and places indicated defendant had a weapon the same or similar to exhibit K, the one taken from him when arrested.

It is now argued for defendant that the effect of that testimony was to prove other and unrelated crimes. The impeaching testimony does not do so directly. If it may have had such implications, its admission was not error. By his own story of the manner in which he came into possession of the weapon on him when arrested and his qualified admission of former possession and use of weapons, defendant himself laid enough ground for the admission of the evidence now assigned as error.

The testimony introduced by the state in rebuttal, tending to show his possession and use on previous occasions of a weapon similar to the one in his possession when arrested, did not concern statements made previously in conflict with his testimony. It did show former conduct on his part tending to discredit some of his own important testimony. Foundation is necessary to impeach through previous contradictory statements. It is not needed to admit evidence of previous conduct, contradictory to the testimony of a witness. Ladd v. Newell, 34 Minn. 107, 24 N. W. 366; State v. Connelly, 57 Minn. 482, 59 N. W. 479. Nor is foundation prerequisite to impeachment of a party to the action who testifies for himself. All that aside, the trial judge has a wide discretion in admitting evidence on a collateral issue which has a fair tendency to show that the testimony of one party or witness is more worthy of belief than that of another. Glassberg v. Olson, 89 Minn. 195, 94 N. W. 554. In particular, "evidence tending to show a disposition on the part of a witness to withhold the truth by concealing the facts, is admissible for the purpose of showing bias and impugning the credibility of the witness." State v. Kampert, 139 Minn. 132, 138, 165 N. W. 972, 974.

■ The defense was all denial and attempted alibi. The principal alibi witness, already mentioned, was a St. Paul barber. He testified that he was cutting defendant's hair in his shop on Wabasha street, St. Paul, at a time which would have made it impossible for defendant to have participated in the holdup. There was other testimony in corroboration. But, taken as a whole, the alibi theory is distinctly shaken by inherent weaknesses and contradictions in the supporting evidence. Furthermore, after his arrest and before

the trial, defendant had made to the county attorney and the police a statement wherein he said that on the afternoon of the bank hold-up he was on his way from Superior, Wisconsin, to St. Paul, arriving in the latter city about five p. m. That statement doubtless shattered the testimony of both Noe and Lawrence DeVol as far as it tended to establish an alibi.

With so much by way of preface, we consider an assignment of error based upon the denial of defendant's motion for a new trial on the ground of newly discovered evidence. Lawrence DeVol, testifying for defendant, said that he never met the latter until after the crime. By way of foundation for impeachment, DeVol was asked if he had not at a specified time at Paducah, Kentucky, when defendant was on trial there, appeared as an "alibi witness" for him. He answered in the negative. In rebuttal and attempted impeachment of DeVol, the state called one Mason, from Paducah. He was asked if, upon the designated occasion, he had heard DeVol "testify on behalf of this defendant." His answer was: "I heard him testifying, but I could not say what his testimony was." But he did say in answer to the next question that DeVol's testimony was "on behalf of this defendant Hankins."

Upon the motion for a new trial the affidavits for defendant, many of them, show rather conclusively (they were not controverted by the state) that Mason was mistaken in his identification of DeVol as one of the witnesses in the trial at Paducah. The argument is that it was error not to grant a new trial on the ground of surprise and this newly discovered evidence. As already indicated, the alibi for defendant was a flimsy affair. Therefore, if the trial judge in denying the motion for a new trial on the ground of newly discovered evidence considered that defendant was not hurt by Mason's testimony, we cannot say that there was the abuse of discretion which must appear before we reverse on the ground that newly discovered evidence demanded a new trial as matter of law.

Concerning other alleged new evidence assigned as basis for the motion for new trial, it is enough to say there was nothing about

it to compel granting of the motion. Its denial was not an abuse of discretion.

All of the assignments of error have been considered. The foregoing does not deal with all of them. But it does cover the merits of the appeal. One argument for the defendant is that it was error to admit in evidence anything concerning the loot and gangster equipment found in the possession of DeVol when he was arrested. Certainly nothing more is needed in answer to that argument than mere reference to the evidence connecting defendant with DeVol as a participant in the holdup.

The case has been argued and reargued. Our former opinion, not widely different from this, was open to the objection that it misinterpreted one portion of the bulky record, which we have had to examine in typewritten form. Because of that misinterpretation, to which our attention was properly called by the petition for rehearing, the former opinion will be considered as superseded by this, which will stand as our decision of the case.

Order affirmed.