STATE of Minnesota, Respondent,

v.

Thomas E. DARVEAUX, Appellant.

No. 81–475.

Supreme Court of Minnesota.

April 16, 1982.

---

C. Paul Jones, Public Defender, and Mark F. Anderson, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Robert F. Carolan, County Atty., Thomas M. Bambery and Charles A. Diemer, Asst. County Attys., Hastings, for respondent.

PETERSON, Justice.

Defendant, Thomas E. Darveaux, was arrested in connection with the armed robbery of a drug store and was found guilty by a district court jury of aggravated robbery in violation of Minn.Stat. § 609.245 (1980). Defendant appeals from his conviction, contending that (1) the identification procedures were impermissibly suggestive, (2) the admission of other-crimes evidence constitutes reversible error, (3) the admission of defendant's past convictions for impeachment purposes constitutes reversible error, (4) the use of defendant's post-arrest silence for impeachment purposes violates due process, and (5) the alleged prosecutorial misconduct warrants a new trial. We affirm.

The events leading to defendant's arrest and conviction for armed robbery may be summarized as follows:

On September 29, 1980, Dawn Lindberg, a 17-year-old clerk, and A. Eugene Anderson, the owner, were working at Anderson Drug Store in Farmington, Minnesota. Shortly after 8 p. m., two armed individuals, a male and female, entered the store. Lindberg saw a woman wearing a nylon-knit mask enter first, followed by a man who put on a similar mask after about 10 seconds. The man, who had "sort of a limp," ordered Lindberg to walk to the back of the store.

Anderson, who was working at the pharmacy in the back of the store, noticed the man "shuffling" down the aisle and waving a gun, and asked: "What the hell is going on here?" The man responded: "Don't move or I'll shoot the girl first, then I'll shoot you."

The man demanded some drugs, specifying morphine and Dexedrine. Anderson said he did not carry those drugs in stock. The man threatened to shoot Anderson if he found them. After further demands, Anderson gave the man varying amounts of codeine, Preludin and Tussionex.

The robbers tied Anderson and Lindberg with white adhesive tape, put paper in their mouths, and then walked around the pharmacy, taking more drugs. They stole no money but took about $594 worth of drugs, including different quantities of Percodan, Valium, Preludin, Percodan-Demi, Percobarb, Tussionex and codeine.

At 8:20 p. m., Leah Moen, Lindberg's friend, entered the store. The man tied Moen with a telephone cord. The robbers then left through the back door. The victims untied themselves and called the police.

Sergeant Ronald Ryan, a St. Paul police officer, heard about the Farmington robbery the next day. The description of the male robber and of the crime, including the particular method of securing the victim, brought to mind a possible suspect. On October 1, Ryan took pictures of eight men, including defendant, to Farmington and showed them to Lindberg, Anderson and Moen. Both Lindberg and Moen selected defendant's picture and positively identified him as the male robber. Anderson chose three pictures, including defendant's, as pictures of possible suspects.

Ryan returned to St. Paul and obtained an arrest warrant for defendant and search warrants for defendant and his St. Paul residence. Defendant and a woman, Lynn Cairl, were arrested in front of the resi-

dence. Ryan searched defendant and found various tablets and capsules, which were later identified as Percodan, Preludin and Vicodin. Ryan also searched Cairl. In her purse he found some marijuana, two bottles of Tussionex and other pills which were later identified as codeine, Percodan, Nembutal, Tagamet, Riker, Tylenol and Valium. Police officers searched the residence and found more Percodan and Valium. All these drugs were admitted into evidence at trial.

On October 2, Lindberg and Moen viewed a physical lineup, consisting of defendant and three other men. The four men walked a short distance; only defendant walked with a limp. Defendant was also the only person who appeared in both the photographic lineup and the physical lineup. Both Lindberg and Moen positively identified defendant as the male robber.

Defendant's jury trial began on December 9. Lindberg, Anderson and Moen testified and made positive in-court identifications of defendant as the robber. Defendant responded with an alibi defense. Defendant and his sister testified that he was at his sister's St. Paul residence at the time of the robbery. The state used four of defendant's prior convictions for impeachment purposes. During cross-examination, defendant admitted that he failed to disclose his alibi to the police immediately after his arrest.

The jury found defendant guilty of aggravated robbery. The district court subsequently sentenced defendant to 96 months imprisonment. Defendant now appeals from his conviction.

1. Defendant's first contention is that his right to due process was violated by the admission of identification evidence. The issue, which must be evaluated in light of the totality of the circumstances, is whether the pretrial identification procedures were "so impermissibly suggestive as to give rise

to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 383–84, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968).

■ The photographic display was not impermissibly suggestive. Defendant's photograph was not unique among those displayed, the police did not suggest in any manner which photograph should be selected, and the use of only eight photographs is not itself unduly suggestive. *Cf. United States v. Gantt*, 617 F.2d 831 (D.C.Cir.1980) (use of only six photographs not unduly suggestive); *United States v. Miller*, 507 F.Supp. 1347 (D.Md.1981) (same).

■ By contrast, the four-man physical lineup was unduly suggestive. Defendant was the only man in the lineup whose photograph had been shown to the eyewitnesses. This procedure was unduly suggestive in itself. *State v. Webber*, 292 N.W.2d 5 (Minn.1980); *State v. Witt*, 310 Minn. 211, 245 N.W.2d 612 (1976). Moreover, defendant was the only man who limped. This also presented an unduly suggestive situation. *Royal v. Maryland*, 529 F.2d 1280 (4th Cir. 1976); *United States v. Crouch*, 478 F.Supp. 867, 871 n.3 (E.D.Cal.1979) (dictum).

The conclusion that the lineup was unduly suggestive does not end the inquiry. It must also be determined whether under all the circumstances the lineup gave rise to a very substantial likelihood of misidentification. In this case, Lindberg and Moen, the only eyewitnesses who viewed the lineup, had already positively identified defendant in a valid photographic display.[1] Because the physical lineup was merely confirmatory, we find that it did not cause a substantial likelihood of misidentification. *State v. Knight*, 295 N.W.2d 592 (Minn. 1980); *State v. Cobb*, 279 N.W.2d 832 (Minn.1979).

---

1. Lindberg's positive identification of defendant is particularly significant. She was the only eyewitness who saw the male robber without his mask. Also, she had established a good "record for reliability." *Neil v. Biggers*, 409 U.S. 188, 201, 93 S.Ct. 375, 383, 34 L.Ed.2d 401 (1972). On the night of the robbery, surrounded by four police officers, Lindberg refused to positively identify a suspect who resembled the male robber in a potentially suggestive one-on-one confrontation.

■ 2(a). At trial the state introduced evidence that 2 days after the robbery St. Paul police seized assorted drugs from defendant's person, from the purse of his companion, Lynn Cairl, and from his residence. Many, but not all, of the drugs were of the same type that had been taken in the Farmington robbery. Defendant's second contention is that he was denied a fair trial by the admission of other-crimes evidence of drug possession in violation of the safeguards established in *State v. Spreigl,* 272 Minn. 488, 139 N.W.2d 167 (1965). We conclude that the evidence of the drugs was properly admitted without *Spreigl* notice as proof of the immediate episode for which defendant was being tried. *Id.* at 497, 139 N.W.2d at 173; Minn.R.Crim.P. 7.02.

■ 2(b). Defendant's third contention is that the introduction of evidence that defendant was a suspect in other crimes was reversible error. We find no error. Defendant's counsel initially brought out the fact that defendant was a suspect in other robberies. The prosecutor's subsequent questions and closing argument did not go beyond the precise scope of the defense attorney's inquiry and thus were proper.

■ 3. Pursuant to Minn.R.Evid. 609, the trial court permitted the state to impeach defendant through the use of four prior convictions: a 1968 aggravated assault with a dangerous weapon, a 1976 felony theft, a 1977 misdemeanor theft and a 1978 felony theft. Defendant's fourth contention is that he was denied a fair trial by the admission of the misdemeanor theft and aggravated assault convictions.

■ The 1977 misdemeanor theft conviction, based on a shoplifting offense, was admitted for impeachment purposes pursuant to Minn.R.Evid. 609(a)(2), which provides that crimes directly involving dishonesty or false statement are automatically admissible without regard to the serious-

ness of the punishment and without any requirement that probative value be balanced against prejudice. The Committee Comment to Minn.R.Evid. 609 states that such crimes "involve acts directly bearing on a person's character for truthfulness"; "[d]ishonesty in this rule refers only to those crimes involving untruthful conduct." A conviction for misdemeanor shoplifting is not a conviction involving dishonesty or false statement within the meaning of Minn.R.Evid. 609(a)(2).[2] The admission of the 1977 misdemeanor theft conviction, therefore, was plainly impermissible.

The 1968 aggravated assault conviction concerns a crime not directly involving dishonesty or false statement; therefore, the conviction was admissible for impeachment purposes only if its probative value outweighed its prejudicial effect. The 10-year limit on the admissibility of convictions imposed by Minn.R.Evid. 609(b) is not applicable because at the time of the trial 10 years had not elapsed since defendant was released from the confinement imposed for this conviction. Nevertheless, having in mind that the conviction occurred over 12 years earlier and the close similarity between this prior crime and the crime charged, the propriety of admitting the 1968 aggravated assault conviction was questionable. *State v. Jones,* 271 N.W.2d 534 (Minn.1978).

■ The challenged admission of the two convictions was not, in any event, reversible error. "A defendant claiming error in the trial court's reception of evidence has the burden of showing both the error and the prejudice resulting from the error. * * * A reversal is warranted only when the error substantially influences the jury to convict." *State v. Loebach,* 310 N.W.2d 58, 64 (Minn.1981). Defendant has not met his heavy burden on these facts. The erroneous admission of the 1977 misdemeanor theft conviction cannot be considered preju-

---

2. We note that a number of federal courts have held that a conviction for misdemeanor or petty shoplifting is not a conviction involving dishonesty or false statement within the identically phrased Fed.R.Evid. 609(a)(2). *United States v. Dorsey,* 591 F.2d 922 (D.C.Cir.1978); *United States v. Ashley,* 569 F.2d 975 (5th Cir.), *cert. denied,* 439 U.S. 853, 98 S.Ct. 210, 58 L.Ed.2d 159 (1978); *United States v. Ortega,* 561 F.2d 803 (9th Cir. 1977).

dicial where two other felony thefts were properly admitted; neither the admission of that conviction nor the 1968 aggravated assault conviction can be deemed to have substantially influenced the jury to convict defendant. The state's evidence was independently strong: three eyewitnesses positively identified defendant as the robber, and drugs similar to those taken in the robbery were seized from defendant. Also, the trial court gave an appropriate cautionary instruction to the jury.

■ 4. Defendant's fifth contention is that he was denied his right to due process by the use of his post-arrest silence for impeachment purposes. During cross-examination, the prosecutor asked defendant:

Q Do you remember speaking with Sergeant Ryan on the evening you were arrested?

A Yes.

Q At that time you told him words to the effect: you had never been in Farmington, or didn't know where it was?

A I believe so, yes.

Q But on that evening you never told him that on the night of September 29 you were at your sister's at 465 White Bear?

[Defendant's attorney]: Objection, Your Honor.

A I don't think so. I don't think. I don't even know if I knew when it was, because I was in shock.

In closing argument, the prosecutor said: The element of the alibi is a matter of second thought on his part. Only now when he is before you on trial does he come up with an alibi. And if he in fact were at his sister's home on the night of the robbery, September 29, he certainly would have told the officers about it: I wasn't there. I couldn't have done it, fellows, because I was at my sister's home that night.

Defendant's attorney did not object to this closing argument.

In *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the United States Supreme Court held that the federal fourteenth amendment due process clause prohibits impeachment in state criminal trials on the basis of a defendant's silence following *Miranda* warnings. The court reasoned:

Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these *Miranda* rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested. * * * Moreover, while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial.

*Id.* at 617–18, 96 S.Ct. at 2245–46 (footnotes omitted). In *Anderson v. Charles*, 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980), the court, noting that it had analyzed the due process question in *Doyle* as though the defendants had remained absolutely silent after receiving *Miranda* warnings, *id.* at 407 n.2, 100 S.Ct. at 2182 n.2, held that "*Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements." *Id.* at 408, 100 S.Ct. at 2182.

In this case, defendant did not choose to remain silent after receiving *Miranda* warnings; he elected to speak. Defendant said he "did not do armed robbery," that he did not know where Farmington was, that the police were harassing him, that he did not commit the crime and that he wanted to know about bail. The prosecutor's questions and closing argument made no unfair use of defendant's silence because "a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent." *Id.* Defendant has no right to remain silent selectively. We agree with the rule established by the Virginia Supreme Court in *Squire v. Commonwealth*, 222 Va. 633, 283 S.E.2d 201, 205 (1981), and hold that "where the record

clearly shows that the defendant chose not to rely on his right to remain silent, but instead made statements to police, the prosecution may show and comment upon the defendant's failure to relate to police crucial exculpatory statements recited by the defendant at trial." Because the record here clearly shows that defendant talked with the police after choosing not to rely on his right to remain silent, we find that defendant's due process rights were not violated by the use of his partial post-arrest silence for impeachment purposes.

In any event, defendant forfeited his right to have the issue considered on appeal. Defendant waived his right to raise the issue of the prosecutor's cross-examination of defendant because defendant's attorney made no motion to strike any of the cross-examination and no request that the jury be directed to disregard it. *State v. Hankins*, 193 Minn. 375, 258 N.W. 578 (1935). As this court has said:

> All too familiar is the habit of witnesses, for which most of them are not to be blamed, of answering objectionable questions before there is objection, or even opportunity therefor. If the question is objectionable, counsel should not be so deprived of the right to object and get a ruling. But if the answer is in the record ahead of the objection and ruling, proper practice requires a motion to strike if error is to be assigned.

*Id.* at 378–79, 258 N.W. at 580. Defendant also waived his right to raise the issue of the prosecutor's closing argument concerning defendant's post-arrest silence, because defendant's attorney failed altogether to object at trial and to request curative instructions. *State v. Clark*, 296 N.W.2d 359 (Minn.1980); *State v. Hofmaster*, 288 N.W.2d 218 (Minn.1979).

5. Defendant's final contention is that he was denied his right to a fair trial because of repeated instances of impermissible comment by the prosecutor in closing argument. Because defendant's attorney failed to object to any of these statements at trial, defendant is deemed to have waived his right to have the issue of prose-

cutorial misconduct in closing argument considered on appeal. *State v. Bazoff*, 300 N.W.2d 179 (Minn.1981); *Spears v. State*, 300 N.W.2d 173 (Minn.1980).

Affirmed.