Ronald Elmer CALDWELL, Appellant,

v.

STATE of Minnesota, Respondent.

No. C9–83–1940.

Court of Appeals of Minnesota.

April 17, 1984.

C. Paul Jones, State Public Defender, Robert D. Goodell, Asst. State Public Defender, Minneapolis, for appellant.

· Hubert H. Humphrey III, Atty. Gen., Thomas Foley, Ramsey County Atty., Steven C. DeCoster, Asst. County Atty., St. Paul, for respondent.

Considered and decided by POPOVICH, C.J., and PARKER and LANSING, JJ., with oral argument waived.

## OPINION

PARKER, Judge.

Ronald Caldwell was convicted by a jury of aggravated robbery, based on the identification testimony of a sole eyewitness. His request for postconviction relief was based on claims that: (1) his right to confrontation was violated by certain evidentiary rulings of the court; (2) his right to due process was violated because of impermissibly suggestive pretrial identification procedures; and (3) the evidence was insufficient to support his conviction. The District Court denied the petition. We affirm.

## ISSUES

1. Was appellant's constitutional right to confrontation violated when (a) the trial court precluded, as irrelevant, inquiry into how the photos were chosen for the photo display, or (b) the trial court sustained the state's objection to the question posed to the sole witness, "[s]eemed like a long time to you, didn't it?"

2. Were the pretrial identification procedures impermissibly suggestive?

3. Was the unimpeached testimony of a single eyewitness sufficient evidence for the jury to convict appellant?

## FACTS

On March 17, 1981, two young black males entered a St. Paul store. Judy Passe, manager, showed them some merchandise. The two left after three to five minutes, saying they would return with money. They returned ten to fifteen minutes later. Passe again assisted them.

The taller of the two men grabbed Passe and threatened her at gunpoint. He then stole the store's money and Passe's rings. The two fled after about ten minutes in the store. Passe saw them running away.

Passe called the police immediately. She described the taller of the two men as black, 20 to 25 years old, 5' 8" to 6', 160 to 180 pounds, round face and short hair.

The next day, Passe was called to the police station to see if she could identify anyone in a photo display. The officer showed her 12 photographs. One was considered by the police to be a suspect. The other 11 were "fill-ins" chosen from a large number of available photos depicting black males of similar ages with haircuts similar to those described by Passe. Passe identified Caldwell from a "fill-in" photo as the taller of the two robbers.

Subsequently, Passe went to the police station to observe a lineup. Included with Caldwell were three men fitting his general description. Passe instantly recognized Caldwell as the taller man who robbed her.

At trial, Passe identified Caldwell as the taller man who robbed her. The results of the pretrial identification procedures were admitted over defendant's objections. On cross-examination, defense counsel focused on Passe's eyewitness testimony. He attempted to show that the robbers were in her presence for only a short time, and that Passe was too frightened to remember accurately and to identify Caldwell. Passe admitted she was fearful and nervous.

The cross examination continued:

Q: From the time that the individuals first entered the store for the second time on March 17th, until they left, how much time transpired?

A: I would say they were in the store about ten minutes.

Q: Seemed like a long time to you, didn't it?

Ms. Elfstrom: Objection, Your Honor. Irrelevant.

The Court: Sustained.

Q: Did it seem to you like a long time?

Ms. Elfstrom: Same objection.

The Court: Same question, counsel. Hasn't gotten any more relevant.

The jury convicted Caldwell of aggravated robbery, in violation of Minn.Stat. §§ 609.245, 609.05 and 609.11 (1982). Caldwell's petition for postconviction relief was denied by the district court's order and is the subject of this appeal.

## DISCUSSION

### I

■ The Sixth Amendment guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." U.S. Const.Amend. VI; *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). The right of cross examination is one of the primary interests secured by the confrontation clause. *Davis*, 415 U.S. at 315, 94 S.Ct. at 1110. However, cross examination is subject to the broad discretion of a trial judge to make evidentiary rulings as part of the trial procedure. *Id.* at 316, 94 S.Ct. at 1110. *See Alford v. U.S.*, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931); *State v. Olkon*, 299 N.W.2d 89, 101 (Minn.1980), cert. den. 449 U.S. 1132 (1981); McCormick on Evidence, § 29 (1972).

■ Appellant asserts the procedures used by the officer in choosing the photo display were relevant, citing *Olkon*. In *Olkon*, the Court ruled that the trial court did not abuse its discretion in ruling that evidence of background information concerning an undercover police investigation was relevant and admissible. The undercover operation which actually produced the evidence against Olkon was of fundamental significance, as the defendant had raised the defense of entrapment. On the other hand, the relevance in Passe's testimony here is how she identified Caldwell in the photo display, not in how the officer chose the photos. Rulings on evidentiary matters rest within the sound discretion of the trial court. *E.C.I. Corp. v. G.G.C. Co.*, 306 Minn. 433, 437, 237 N.W.2d 627, 630 (1976).

Appellant also claims his right to confrontation was violated when the trial court sustained a relevancy objection to defense counsel's question to Passe, "[s]eemed like a long time to you, didn't it?" This question referred to the time the robbers were in her presence. Appellant contends that this question was designed to show that Passe's perception of time may have been distorted because of her fearful state of mind. The State argues that this question was irrelevant, argumentative and meaningless.

■ We agree with the State that the question was irrelevant and argumentative. Counsel had just completed specific questioning of the witness' recollection of the length of time the robbers were in her presence. It is unclear how the information this question may have elicited could produce any relevant evidence; the witness had already admitted she was nervous and fearful. The trial court's ruling was a matter within his discretionary province. The conclusion that her mental state may have affected her time sense was perfectly appropriate for final argument.

## II

Appellant contends that his right to due process was violated by the admission of the pretrial identification evidence, and questions whether the procedures were "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 383–84, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); *See also State v. Darveaux*, 318 N.W.2d 44 (Minn.1982).

■ In *Darveaux* the Minnesota Supreme Court stated that in determining whether pretrial procedures were impermissibly suggestive, the totality of the circumstances must be examined. *Darveaux*, 318 N.W.2d at 47. The *Darveaux* court found a photo display constitutionally valid. Thomas Darveaux's photograph was not unique among an eight-man display, and the police did not suggest in any manner which photograph should be selected. Further, the Court indicated that the use of only eight photos was not itself unduly suggestive.

■ Here, Passe positively identified appellant from a 12-man photo display. All the photos matched a general description of the robbers given by her the day before. The police did not improperly suggest which photo to select. The photo display shown to Passe was therefore not impermissibly suggestive so as to give rise to any likelihood of irreparable misidentification.

■ Next, appellant claims the trial court abused its discretion in admitting the 12-man photo display into evidence. In *State v. Goar*, 295 N.W.2d 633, 634 (Minn. 1980), the Minnesota Supreme Court cautioned against admission of this kind of evidence because of the danger that it might suggest involvement by the defendant in prior criminal conduct, but made it clear that such evidence is admissible if its probative value is not substantially outweighed by its potential for unfair prejudice. *Goar*, 295 N.W.2d at 634. *See* Rule 403, Minn.R.Evid.

In holding that the trial court did not abuse its discretion in admitting the photo display, the *Goar* court balanced the probative value against the danger of unfair prejudice. The court pointed out that (1) the jury was not told when the photograph of the defendant was taken; (2) identity was the key issue for the jury; and (3) all six of the photos were of men who closely fit the description of the suspect. The court there concluded that admitting the display "allowed the jurors to see for themselves that the identification was not meaningless." *Goar*, 295 N.W.2d at 634.

■ Here, during in-chambers discussion, the trial court offered to give the following cautionary instruction to the jury:

There is proper concern about the witness' reference to the photos of the defendant. The police have many pictures of people, including driver's license photos. Simply because the police have a picture of a person, the picture does not mean that he has committed a crime before or since, so please understand that there is no connotation of guilt of any

crime simply because some pictures of defendant were in the possession of the police."

Appellant's counsel declined this offered instruction because appellant's prior record of unauthorized use of a motor vehicle had been admitted into evidence on direct examination of the appellant. The appellant admitted the photos were cleaned up to prevent any indication that they were mug shots. The evidence was probative because, as in *Goar*, the exhibit allowed the jurors to see for themselves that Passe's identification was not meaningless. Thus, the trial court did not abuse its discretion in admitting this evidence.

Appellant also claims that the composition of the four-man physical lineup was impermissibly suggestive. In *State v. Darveaux*, 318 N.W.2d 44, 47 (Minn.1982), the court held that a procedure in which the defendant was the only man in the lineup whose photograph had been shown to eyewitnesses was unduly suggestive in itself. The court stated:

> The conclusion that the lineup was unduly suggestive does not end the inquiry. It must also be determined whether under all the circumstances the lineup gave rise to a very substantial likelihood of misidentification. In this case, Lindberg and Moen, the only eyewitnesses who viewed the lineup, had already positively identified defendant in a valid photographic display. Because the physical lineup was merely confirmatory, we find that it did not cause a substantial likelihood of misidentification. (Citations omitted).

■ There was no showing here that the people in the photo display were in custody or otherwise available for a physical lineup. Even if the lineup were unduly suggestive, it was merely confirmatory since Passe had already positively identified appellant as the robber in the valid photographic display. *State v. Russell*, 330 N.W.2d 459, 461 (Minn.1983); *Darveaux*, 318 N.W.2d at 47. The lineup did not cause a substantial likelihood of misidentification.

## III

■ Appellant claims there was insufficient evidence for the jury to convict. In determining the sufficiency of the evidence in a criminal matter, we " 'must view the evidence in a light most favorable to the jury verdict and decide whether the jury could reasonably have found the defendant guilty of the crime charged.' " *State v. Olkon*, 299 N.W.2d 89, 106 (Minn.1980), *cert. den.* 449 U.S. 1132, 101 S.Ct. 954, 67 L.Ed.2d 119 (1981) (quoting *State v. Swain*, 269 N.W.2d 707, 712 (Minn.1978)).

■ Appellant's main contention is that he was convicted on the identification evidence of just one eyewitness. The Minnesota Supreme Court has consistently upheld convictions on the identification testimony of a single eyewitness. *See, e.g., Hamilton v. State*, 293 Minn. 257, 262, 198 N.W.2d 271, 274–75 (1972); *State v. Gluff*, 285 Minn. 148, 150, 172 N.W.2d 63, 64 (1969); *State v. Burch*, 284 Minn. 300, 313, 170 N.W.2d 543, 552 (1969). These cases follow the reasoning first set out in *Burch:*

> We have said that a verdict may be based on the testimony of a single witness no matter what the issue, *Benson v. Northland Transp. Co.*, 200 Minn. 445, 450, 274 N.W. 532, 534 [1937], and that identification testimony need not be positive and certain, but that it is enough for a witness to testify that it is his opinion, belief, impression, or judgment that the defendant is the person he saw commit the crime. *State v. Sutton*, 272 Minn. 399, 138 N.W.2d 46 [1965]. The factors affecting the reliability of eyewitness testimony to which defendant refers— time for observation, circumstances under which the observation was made, etc. —go to the weight to be accorded the testimony, not its admissibility.

*Burch*, 284 Minn. at 313, 170 N.W.2d at 552.

The jury had not only the in-court identification of the appellant by the eyewitness, they had the photo display and a confirmatory lineup. Passe's identification of the defendant remained steadfast and unimpeached.

Furthermore, this is not a case where the single witness' identification of the defendant is made after only limited observation. *State v. Esmailzadeh,* 312 N.W.2d 117, 118 (Minn.1981). *State v. Walker,* 310 N.W.2d 89, 90 (Minn.1981). Here, Passe testified that she had ample chance to see the robber's undisguised face on the first visit and was with him for almost five minutes. She was face to face with the robber during the robbery for about ten minutes. The lighting conditions were good. She gave an accurate description of the appellant to the police shortly after the robbery. She said she could identify the robbers. The very next day she picked appellant out of a 12-man photo display as the man who robbed her. She also identified the appellant in the confirmatory lineup. Passe again identified appellant at trial.

Under all the circumstances, it cannot be said that Passe's identification is not entitled to the weight the jury gave to it. The evidence was sufficient for the jury to find the appellant guilty of aggravated robbery.

### DECISION

The postconviction court's order denying appellant's petition is affirmed.