*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0127**

State of Minnesota,
Respondent,

vs.

Michael David Henderson,
Appellant.

**Filed January 19, 2016
Affirmed
Ross, Judge**

Hennepin County District Court
File No. 27-CR-14-8400

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Elizabeth R. Johnston, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Suzanne M. Senecal-Hill, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Halbrooks, Judge; and Chutich, Judge.

**U N P U B L I S H E D   O P I N I O N**

**ROSS**, Judge

Former Sam's Club employee Michael Henderson was attempting to rob the Sam's Club store at gunpoint when he trained his .22 caliber handgun at an employee's chest and

pulled the trigger. A malfunction prevented the gun from discharging. A jury found Henderson guilty of attempted second-degree murder, and Henderson appeals his conviction. He argues that the evidence is insufficient to prove that he attempted to fire the gun at the employee because the store's surveillance video footage does not show the employees reacting as if he did. Sufficient testimonial evidence defeats Henderson's argument, and we affirm his conviction.

**FACTS**

A Bloomington Sam's Club supervisor was closing the store on a March 2014 evening when a man outside walked up to the door wearing a black ski mask, a Sam's Club vest, and black gloves. The masked man told P.B., the supervisor, that he was an overnight employee. It was a cold night, so the gloves and ski mask caused P.B. no immediate suspicion. He let the man inside.

The masked man walked upstairs and into a room where the store's assistant manager, M.O., was participating on a conference call. He told M.O. he needed help putting his walkie-talkie away. M.O. supposed that the man was a new cart attendant. So he led him to a room and pointed to the walkie-talkie chargers. The masked man then brandished a handgun, pointed it at M.O.'s face, and told M.O. to empty the safe or be shot. M.O. opened the safe and the man ordered him to put the money into a plastic bag the man was carrying. M.O. complied.

The masked man collected the money and left the office. M.O. dialed 9-1-1.

The man walked back downstairs and toward the store's exit. He was carrying the bag full of money. N.H., another employee, was also walking toward the exit, just ahead

2

of the masked man.  P.B. was still stationed near the exit, and, in keeping with store practice, he asked the man to open his bag so he could check it, presumably for any stolen merchandise.

The masked man again drew his handgun. He pointed it at P.B., then at N.H.'s face, then back at P.B.'s chest. He told the two employees to step back.  N.H. then recognized the masked man's voice as belonging to Michael Henderson, his former coworker at the store. While Henderson trained the gun at P.B.'s chest, P.B. and N.H. heard a "click" sound, and both believed Henderson had just pulled the trigger. The gun did not fire. One of the two men saw Henderson pull the trigger again while he pointed the gun at P.B.'s chest, and again the gun did not fire.

The two employee's watched as the masked man retreated into the store, and P.B. radioed M.O. for help.  M.O. told P.B. to open the door and let the robber leave.  P.B. let him out but followed him into the parking lot, hoping to identify the license plate of any escape vehicle.

Henderson, still masked, instead jumped a nearby fence and fled across Interstate Highway 494. Police arrived and saw a man trying to stop and enter a car on the highway, but the driver sped away. Police apprehended the man and identified him as Michael Henderson. They found his gloves stuck in the fence, his vest and ski mask near the highway, and his plastic bag with the stolen money and a .22 caliber semi-automatic handgun also near the highway.

Police examined the gun. It was operable and its safety had been placed in the firing position. But a spent cartridge casing was lodged in the barrel, preventing a live round from entering and the gun from firing.

The state charged Henderson with one count of first-degree aggravated robbery, two counts of attempted second-degree murder, one count of attempted first-degree aggravated robbery, and one count of second-degree assault. Henderson conceded at trial that he committed first-degree aggravated robbery. The jury found him guilty of attempted second-degree murder of P.B.  It did not find him guilty of attempted murder of N.H., but it did find him guilty of the lesser-included offense of second-degree assault. Henderson was acquitted of attempted first-degree aggravated robbery and second-degree assault of the highway driver.

Henderson appeals his attempted second-degree murder conviction and his sentence.

## D E C I S I O N

## I

Henderson argues that the lack of evidence requires us to reverse his conviction for attempted second-degree murder. When considering an insufficient-evidence argument on appeal, we review to determine whether the record contains evidence that, when viewed in a light most favorable to the conviction, supports the verdict. *State v. Ortega*, 813 N.W.2d 86, 100 (Minn. 2012). We assume that the jury believed the state's witnesses and disbelieved contrary evidence. *Id.* We will not reverse the conviction if the jury, honoring

4

the presumption of innocence and its duty not to convict without proof beyond a reasonable doubt, could reasonably find the defendant guilty. *Id.*

Henderson's argument relies substantially on footage from the surveillance video. He first maintains that the video fails to show that P.B. or N.H. reacted as though they had actually witnessed him pulling the handgun's trigger. The argument might persuade a fact-finder to reject P.B.'s and N.H.'s testimony as incredible. But on appeal, we do not look to the evidence to determine whether it could have led a reasonable jury to acquit; we look to determine whether it could have led a reasonable jury to convict. In this case, we therefore consider whether the evidence could have led the jury reasonably to find that Henderson attempted to murder P.B. An attempted-murder conviction requires proof that the defendant took a substantial step toward committing murder. *See* Minn. Stat. § 609.17, subd. 1 (2012); Minn. Stat. § 609.19, subd. 1(1) (2012). The state presented evidence that Henderson took a substantial step by pulling the handgun's trigger while he pointed the gun at P.B.'s chest. We may uphold a conviction even on a single eyewitness's testimony. *See, e.g.*, *Caldwell v. State*, 347 N.W.2d 824, 828 (Minn. App. 1984). Among other evidence, P.B. testified, "I saw him pull the trigger and I heard the sound." N.H. also testified to hearing a "click" sound while Henderson pointed the gun at P.B. Our standard of review requires us to assume that the jury believed this testimony despite the employees' lack of reaction on the surveillance footage. This leads us to sustain the conviction.

Henderson argues also that P.B.'s following him outside after the confrontation also indicates that P.B. had not really seen Henderson pull the trigger. In light of the testimony and our deferential standard of review, again, we must assume that the jury believed P.B.'s

testimony regardless of whether P.B.'s behavior confirmed the testimony. The argument must therefore fail. And we add that the result would likely be the same even under a less-deferential standard of review. This is because P.B.'s following Henderson outside does not apparently conflict with his testimony that he witnessed Henderson pull the trigger. Rather, it corroborates the testimony. P.B.'s following the gun-wielding robber outside suggests that P.B. had some reason not to fear the robber's gun. A jury could conclude that Henderson supplied that reason by pulling the trigger with no discharge. In other words, the jury could reasonably infer that P.B. knew he could safely pursue Henderson because he had just witnessed Henderson do something that convinced him that Henderson's gun was no threat—something like, for example, twice pulling the trigger with no discharge.

**II**

Henderson argues in his pro se supplemental brief that the district court should modify his sentences because they are excessive and must run in concurrent terms rather than consecutively.

He first argues that his sentencing did not adequately reflect his intoxicated state during the crime. But the sentencing guidelines reject voluntary alcohol use as a mitigating factor in sentencing. Minn. Sent. Guidelines 2.D.3.a.(3) (2013). We therefore find no error on this basis.

Henderson also argues that his sentence fails to take into account aspects of his personal history, including his education, volunteer work, and lack of prior criminal history. The district court imposed presumptive sentences for Henderson's convictions. The district court has such wide sentencing discretion that we generally do not review a

6

district court's decision imposing a sentence within the guidelines presumptive range. *State v. Delk*, 781 N.W.2d 426, 428 (Minn. App. 2010), *review denied* (Minn. July 20, 2010). This is in part because "[t]he sentence ranges provided in the [Sentencing Guidelines] Grids are presumed to be appropriate." Minn. Sent. Guidelines 2.D.1 (2013). The supreme court in dicta predicted that a sentence within the presumptive guidelines range would be reversed only in "rare" cases. *State v. Kindem*, 313 N.W.2d 6, 7 (Minn. 1981). We will not exercise our authority to alter a sentence within the presumptive sentence range unless "compelling circumstances" warrant it. *State v. Freyer*, 328 N.W.2d 140, 142 (Minn. 1982). Our review of the record convinces us that the district court sufficiently evaluated Henderson's personal history in making its sentencing decision and that Henderson presents no compelling circumstance warranting a reversal and a different sentence.

Henderson maintains that the probation officer who prepared his presentence investigation report was biased. But he points us to no evidence of this alleged bias and has not developed the argument that the bias would require a different sentence.

**Affirmed.**