**STATE of Minnesota, Respondent,**

v.

**Pamela Sue COLE, Appellant.**

**No. C1–98–1144.**

Court of Appeals of Minnesota.

May 11, 1999.

Mike Hatch, Attorney General, James B. Early, Assistant Attorney General, St. Paul, for respondent.

John M. Stuart, State Public Defender, Lawrence W. Pry, Assistant Public Defender, Minneapolis, for appellant.

Considered and decided by
SHUMAKER, Presiding Judge,
RANDALL, Judge, and HARTEN, Judge.

## OPINION

HARTEN, Judge.

Appellant was convicted of first degree criminal sexual conduct after statements made by the victim, her three-and-a-half-year-old son, were admitted into evidence. She challenges the district court's admission of these statements. Because we see no abuse of discretion, we affirm.

## FACTS

Appellant Pamela Cole is the mother of T.R.C., now six years old. T.R.C. has spent most of his life in foster care, but he visited appellant. In July 1996, while he was living with foster parent Judy Frink, he had three 48–hour visits with appellant. After the third visit, he told Frink, using age-appropriate vocabulary, that he and his mother played games during which she touched his penis and inserted her finger into his anal opening. Frink reported the incident to the county social services department and, at its direction, took T.R.C. to the police station for an interview and to a physician for an examination.

Appellant was charged with one count of criminal sexual conduct in the first degree. Although T.R.C. was ruled incompetent to testify, the videotape of his interview with the police officer was admitted into evidence. The physician, a specialist in child abuse and child sexual abuse, testified that she found a small tear in T.R.C.'s perianal area consistent with child sexual abuse and that, when she asked T.R.C. if anyone had touched him in that area, he answered, "My mother." The physician also told Frink that unsupervised contact with appellant was a possible risk for sexual abuse of T.R.C.

Frink testified that the night after T.R.C. returned from visiting his mother, he said they had played games. Frink asked him what games his mother played, and he replied that he and his mother went under a blanket, that his mother touched his penis and put her finger into his anus, that it bled, and that he did not like it. Over appellant's objection, the testimony of Frink and the physician as to T.R.C.'s statements was admitted.

Appellant challenges her conviction of one count of criminal sexual conduct in the first degree on the ground that evidence of T.R.C.'s statements to Frink, the physician, and the police officer was inadmissible.

## ISSUE

Did the district court abuse its discretion in admitting evidence of statements made by a child too young to testify?

## ANALYSIS

Rulings on evidentiary matters are within the sound discretion of the trial court. *Caldwell v. State,* 347 N.W.2d 824, 826 (Minn.App.1984). The trial court admitted evidence of T.R.C.'s statements pursuant to Minn.Stat. § 595.02, subd. 3, (1996) providing that an out-of-court statement made by a child under the age of ten concerning sexual abuse is admissible as substantive evidence if:

> (a) the court * * * finds * * * that the time, content, and circumstances of the statement and the reliability of the person to whom the statement is made provide sufficient indicia of reliability; and

> (b) the child * * * either:

> (i) testifies at the proceedings; or

> (ii) is unavailable as a witness and there is corroborative evidence of the act[.]

*State v. Lanam,* 459 N.W.2d 656 (Minn. 1990), sets out the criteria for reliability:

> The court must consider, among other things, the spontaneity of the statements, the consistency of the statements, the knowledge of the declarants, the motives of the declarant and witnesses to speak truthfully and the proximity in time between the statement and the events described. * * * The court * * * should evaluate * * * also any corroborating physical evidence.

*Id.* at 660. The district court's statements show that these factors were considered. The district court observed that, "I do not hear any argument that the people providing any of this information are unreliable in and of themselves," and found (1) that the time and circumstances of T.R.C.'s statements to Ms. Frink were appropriate, (2) that the time, content, and circumstances of the video interview with the police officer were appropriate, and (3) that T.R.C.'s statements to the physician were for the purpose of medical diagnosis, which was the reason for the examination. In light of these findings, appellant's argument that the findings are "boilerplate" rather than "individualized" is unpersuasive.

Appellant cites *Coy v. Iowa,* 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), to argue that findings must be "individualized." *Coy* is factually distinguishable; it struck down an Iowa statute designed to protect child victims of sexual abuse by permitting them to testify from behind a screen in part because "there have been no individualized findings that these particular witnesses needed special protection." *Id.* at 1021, 108 S.Ct. at 2803. Here, witness protection was not an issue.

■ Finally, appellant argues that it was error for the district court to admit T.R.C.'s statements to the physician under Minn. R. Evid. 803(4) as "statements for purposes of medical diagnosis or treatment" because, when the district court accepted the evidence, there was not yet foundation testimony that T.R.C. knew he was speaking to a medical doctor and knew he should tell her the truth. But even if T.R.C.'s statements were inadmissible under Minn. R. Evid. 803(4), they were admissible under Minn.Stat. § 595.02, subd. 3, so any error was harmless.

## DECISION

We conclude that the district court did not abuse its discretion in admitting T.R.C.'s statements to his foster mother, the police officer, and the physician.

**Affirmed.**

RANDALL, Judge (dissenting).

I respectfully dissent. Under Article I, Section 6 of the Minnesota Constitution, the confrontation clause was violated by admitting classic hearsay statements of T.R.C.'s foster mother, the police officer, and the doctor. *See State v. Lanam,* 459 N.W.2d 656, 663 (Minn.1990) (Kelley, J., dissenting) (dissenting on ground admission of child victim's statements as admissible hearsay violated defendant's right to confront witnesses under Minnesota Constitution). To be admissible, reliability of a hearsay statement is not, in itself, sufficient, the witnesses must also be unavailable. *Id.* at 667. Under Minnesota law, witnesses have been found unavailable where the witness refuses to testify, or where the witness invokes the Fifth Amendment protection. *See e.g., State v. Ford,* 539 N.W.2d 214, 227 (Minn.1995) (declaring witness unavailability may be established by witness invoking Fifth Amendment protection against self-incrimination); *State v. Iverson,* 396 N.W.2d 599, 606 (Minn.App.1986) (declaring witness unavailable because witness refused to testify), *review denied* (Minn. Jan. 16, 1987). In all these examples, the witnesses are *otherwise legally competent,* but, for one reason or another, cannot be physically subpoenaed into a courtroom.

The pertinent facts are as follows: The state has charged appellant with one count of first-degree criminal sexual conduct.

The evidence revolves around statements made by T.R.C. between July 28, 1996 and July 31, 1996, to various people, including a foster parent, social service, law enforcement, and medical personnel. The alleged victim is appellant's son, T.R.C., who was born December 8, 1992. On September 30, 1997, after a full competency hearing, the district court found that T.R.C. was incompetent to testify in open court. That means the court found that T.R.C. did not have a clear recollection of the alleged criminal events, and did not have a basic understanding of truth from falsity. On that day, T.R.C. was four years and ten months old. The court then went on to find that T.R.C.'s recollection of the events between July 28, 1996 and July 31, 1996, when T.R.C. was only three years and seven months old was so credible because of the people he told, that not only could T.R.C.'s recollection of what happened when he was three years and seven months old come into a criminal trial as substantive evidence, but it was, further, so credible, that T.R.C. did not even have to take the stand under oath and put in his recollection of those events as if this was a real trial. T.R.C.'s recollection could come in as total hearsay!

The trashing of the Minnesota and U.S. Constitutional right of a criminal defendant to confront and cross-examine his accuser, in this case, as in *Lanam*, did not involve an otherwise competent witness who, for some reason, was not physically unavailable. Instead, this case involves a witness who is available, and who is within the jurisdiction of the court.

Generally, unavailability might include personnel overseas in the armed forces or people residing in foreign countries, meaning classes of people who are not subject to the jurisdiction of the court, whether subpoenaed by the state or the defendant. But these classes of people, who could otherwise come into a court of law and testify, have not been legally barred from so doing. What we have here is a young child, T.R.C., who is *legally barred from coming into court* and testifying because he has been adjudicated incompetent to testify. The test for competency is simple, and here, T.R.C.'s incompetency was not appealed further after the hearing. Although the state wanted him to be declared competent, they lost that issue. That issue was not appealed, is over, and T.R.C.'s incompetency to testify in open court is the law of the case.

In *Lanam*, Justice Kelley stated in his dissent:

> The trial court apparently found the declarant incompetent under Minn.Stat. § 595.02, subd. 1(1) (1988). That finding implicitly is based on the alleged child victim's inability to understand the truthfulness of the accusation or inability to form an adequate recollection.

*Lanam*, 459 N.W.2d at 667.

The statutory clause at issue, Minn.Stat. § 595.02, subd. 3(b)(ii) (1998),[1] and the cases interpreting it, make a quantum leap to a definitive violation of the constitutional right to confrontation by the naked device, without justification, of declaring a child under ten to be "unavailable" (and, thus, be able to testify by hearsay) if the child has been adjudicated legally incompetent.

We do not bend or break the Sixth Amendment of the Bill of Rights,[2] nor do

---

1. Minn.Stat. § 595.02, subd. 3 provides that an out-of-court statement made by a child under the age of 10 concerning sexual abuse is admissible as substantive evidence if:

    (a) the court * * * finds * * * that the time, content, and circumstances of the statement and the reliability of the person to whom the statement is made provide sufficient indicia of reliability; and
    (b) the child * * * either:

    (i) testifies at the proceedings; or
    (ii) is unavailable as a witness and there is corroborative evidence of the act; and
    (c) [sufficient notice is given to the adverse party].
    Minn.Stat. § 595.02, subd. 3(a)-(c) (1998).

2. U.S. Const. amend. VI; *see State v. Dukes*, 544 N.W.2d 13, 19 (Minn.1996) (stating right to confrontation is fundamental right under federal and state constitutions).

we end or break Article I, Section 6 of the Minnesota Constitution [3] in other instances when the victim is under ten. We do not have a statute or a case that states that when the victim is under ten, a properly suppressed confession given by a defendant (assuming a clear-cut violation of the obligation to give a *Miranda* warning to someone in custody and assume that finding by the district court stood up on appeal) is now admissible "in the interests of justice," *solely because the victim is under ten and we do not want the state deprived of such good evidence.* But we do exactly that with section 595.02, subdivision 3(b)(ii). We do not have a statute or a case that states that when the victim is under ten, properly suppressed drugs (again assume the district court suppressed and the suppression order stood up on appeal) can be admitted into evidence "in the interests of justice" *solely because the victim is under ten and we do not want the state deprived of such good evidence.* But we do exactly that with Minn.Stat. § 595.02, subd. 3(b)(ii).

First of all, we have created an arbitrary and capricious classification of victims who do not have to take the stand, meaning those under ten years of age. Why do we discriminate against youthful victims, ages 10 to 17? Why do we discriminate against young adults and older adults and make them go through the "distasteful and unsightly process" of having to testify in open court and undergo cross-examination by the defendant's attorney? Why are they denied this "constitutional right" not to have to take the stand that children under ten are given? Secondly, section 595.02, subdivision 3 creates an arbitrary and capricious classification of defendants, meaning those who are accused of sexual abuse. Why do citizens accused of murder, armed robbery, burglary, theft, and other crimes still enjoy what must be an "outmoded right to confrontation and cross-examination," since we deny it to defendants in sex abuse cases? If we are going to mandate political correctness, and make constitutional law and criminal justice an elective, it would seem that all victims of all ages should have the option of coming into court or not, as they and their attorneys and therapists see fit. It would seem that certainly defendants accused of crimes at least as egregious as sexual abuse crimes, should not enjoy this "special privilege" of cross-examination.

We have declared it "good public policy" that when the victim is under ten and adjudicated legally incompetent to come into court and testify, classic out-of-court statements, oral hearsay, audio, written, etc., can come into court and be used as substantive evidence against a defendant in a criminal trial. It is made doubly worse because not only does this hearsay come into evidence, but the defendant is *deprived of any chance to cross-examine* in court. Further, the defendant has no legal standing to demand, at least, that when the out-of-court statements are given to relatives, law enforcement, social workers, teachers, medical personnel, etc., he be allowed to be there in person and through an attorney, at least to cross-examine the witness at that time.

The legal absurdity of this constitutional denial of due process was detailed in the three-judge dissent in *State v. Lanam* written by Justice Kelley and joined by Justices Popovich and Yetka, that stated in part:

> Consequently, legislatures have enacted statutes containing procedures designed to ease the prosecutors' proof problems, and courts, as the majority of this court today does, on various grounds, try to sustain those procedures against constitutional challenge. I, too,

---

**3.** The Minnesota Constitution provides:

> The accused shall enjoy the right to be informed of the nature and cause of the accusation, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor and to have the assistance of counsel in his defense.

Minn. Const. art I, § 6.

would be inclined to join in that laudable effort *were it not for what I consider to be the constitutional mandate that one accused of any crime, no matter how heinous, has certain constitutional rights which neither the legislature nor the courts may limit or abrogate. Legislatures and courts are both restrained in what actions they may take to ease a prosecutor's burden by the Sixth Amendment to the United States Constitution and by art. I, § 6 of the Constitution of the State of Minnesota.* Because I conclude that what was done in this case violates both constitutions by depriving the defendant of his constitutional right to confront the witnesses against him, I respectfully dissent.

The majority opinion, it seems to me, employs an analysis focusing upon the Sixth Amendment to the United States Constitution and federal court cases a rising thereunder to conclude that admission of hearsay testimony of this minor who, it should be kept in mind, was ruled to be incompetent to testify in court, did not violate the accused's constitutional confrontational right. I disagree.

*Lanam,* 459 N.W.2d at 662–63 (emphasis added).[4]

The *Lanam* majority had no answer to the dissent's legal analysis under the Minnesota Constitution, except the circular statement that you can use hearsay if the witness is "unavailable," and a witness under ten is "unavailable" when the witness has been adjudicated legally incompetent

to testify in court. That is a pure conclusory statement, nothing more.

I know of nothing in the Bill of Rights or in the Minnesota Constitution, Article I, Section 6, that makes an exception for due process and fair trial when the victim is under ten years of age. As I pointed out above, confessions and other evidence properly suppressed do not have a built in exception where, despite suppression, you can use them as substantive evidence when the victim "is under ten years of age."

The *Lanam* dissent pointed out:

> Without the slightest doubt the alleged child victims, the declarant, was physically available to testify in this case. As I understand the majority, however, it would equate unavailability with incompetence to testify—a nexus which I believe to be unjustified.

*Id.* at 667.

Here, of course, T.R.C. is physically available to testify! Either side could easily call him to the stand, except for the legal bar the district court imposed to his testifying, after determining that he could not recall events or tell the truth from falsehood. Even though one side, the state, wanted T.R.C. to take the stand, the court barred him from testifying because it found he was incompetent.

In reality, T.R.C. was not "unavailable" at all. The child was *completely available to the prosecution,* who got in all of his statements about the incident, and got them right to the jury as substantive evidence, and was even able to do that with-

---

4. Justice Kelley did not base his dissent on the Sixth Amendment of the Bill of Rights under the U.S. Constitution. It is clear from federal cases that although the U.S. Supreme Court has struggled mightily with this issue of child witnesses in sex abuse cases, they have managed to dance around the issue, not confront it head on, and have allowed such testimony with so many "exceptions and safeguards" that the exceptions and safeguards have subsumed the rule, meaning the Sixth Amendment right to cross-examine. The rule has become that if the prosecution really wants this testimony and needs this testimo-

ny, some way will be manufactured to get it in, even though the alleged child victim is not put on the stand.

Thus, Justice Kelly based his dissent on his disagreement with the *Lanam* majority's interpretation of the Minnesota Constitution, Article I, Section 6. He had to focus his attack on this denial of the historic right to confrontation and cross-examination under the Minnesota Constitution because federal courts have pre-eminence when interpreting the U.S. Constitution. The Minnesota Supreme Court is pre-eminent when interpreting the Minnesota Constitution.

out subjecting T.R.C. to cross-examination! *T.R.C. was only unavailable to the defendant and her attorney.* This incongruous interpretation of the law has to rank as one of the worst things we do to citizens (those accused of crimes are citizens) in denying them due process, the constitutional right to cross-examine, and a fair trial.

The *Lanam* dissent aptly noted:

> I am not unmindful of the frustration of a society attendant to a court decision which, if wrong, has great potential to revictimize or traumatize a small child. I recognize that in enacting Minn.Stat. Sec. 595.02, subd. 3 (1988) the legislature made an effort with a legitimate end—the protection of child victims as witnesses, *but a legitimate end in and of itself never justifies diminution of constitutional rights. Nor are courts permitted to ignore or to refashion constitutional provisions guaranteeing an accused a confrontational right in order to ensure convictions;* constitutional rights afforded those accused of crimes cannot be negated by well-intentioned statutes or by court rules of evidence, nor by well-intentioned zeal to protect abused child witnesses.

*Id.* at 668 (citation omitted) (emphasis added).

Section 595.02, subdivision 3(b)(ii) is a "feel good clause" designed to make people believe the legislature and the court system care about children under the age of ten years. Of course we care about children under the age of ten years! The point is, we are duty bound and obligated to care for all citizens, including those over the age of ten, who have the right to a fair trial, whatever the charge might be.

A practical and constitutionally acceptable solution is laid out in the *Lanam* dissent. *Let the child under ten testify.* If the state refuses to call the child, fine. The result simply is that none of the out-of-court utterings of the child, whether oral, written, visual, or audio, come into evidence either. On the other hand, if either side calls the child as a witness, the child's direct testimony is now substantive evidence. The out-of-court statements, as we have here, can be proffered by either side, not as primary substantive evidence, but as admissible corroborative evidence of what the child testified to on the stand. The standard tests for evaluating the reliability of out-of-court corroborating evidence to what a witness says on the stand would remain. But those tests would only be relevant if the child witness actually took the stand.

The *Lanam* dissent put it simply:

> Rather than hold that a child is incompetent to testify, the testimony should be admissible for the jury to judge its worth. The trier of fact should be permitted to determine the weight and credibility to be given to the testimony of the child victim.

*Id.* at 668 (quotation omitted). At the time of *Lanam*, "[a]t least 13 states [had] done away with the competency requirement." *Id.* at n. 5 (citation omitted).

The federal courts have come to a practical solution in cases involving the mental impairment of prospective witnesses. Mental impairment is the equivalent of a child being declared incompetent to testify after a competency hearing (when it is found that the child does not recall events and cannot distinguish truth from falsity). Federal courts take the practical approach that everyone starts out as competent until proven otherwise. *See* Fed.R.Evid. 601 (stating everyone is competent to be witness except as otherwise provided in federal rules). In *United States v. Lightly*, 677 F.2d 1027 (4th Cir.1982), the court stated:

> Every witness is presumed competent to testify, Fed.R.Evid. 601, unless it can be shown that the witness does not have personal knowledge of the matters about which he is to testify, that he does not have the capacity to recall, or that he does not understand the duty to testify truthfully. This rule applies to persons

considered to be insane to the same extent that it applies to other persons.

*Id.* at 1028 (citations omitted). Insanity by itself is not a flat bar to testify in court. In *United States v. Gutman*, 725 F.2d 417 (7th Cir.1984), the court stated:

> Although insanity as such is no longer a ground for disqualifying a witness, a district judge has the power, and in an appropriate case the duty, to hold a hearing to determine whether a witness should not be allowed to testify because insanity has made him incapable of testifying in a competent fashion.
>
> * * * *
>
> There is also no question that the district judge could have conditioned Odom's testifying on his agreeing to take a psychiatric examination the results of which would be available to Gutman's lawyer for use in impeaching Odom on the stand. The rule allowing the insane to testify assumes that jurors are capable of evaluating a witness's testimony in light of the fact that he is insane, and it may seem to follow that the jury, to assist it in evaluating such testimony, should have the results of an up-to-date psychiatric examination of a prospective witness who has given definite indications of serious mental illness, as Odom had.

*Id.* at 420 (citations omitted).

What the federal rules of competency and these above cases, taken together, do, is fashion a practical solution. Either side can start out putting anyone they want on their prospective witness list. Either side can then ask for a competency hearing. If the district judge finds the person competent to testify, they let that testimony go to the jury for whatever it is worth, and obviously both sides get a right to examine, cross-examine, and impeach. That is the way it works in real trials. On the other hand, if the federal judge finds the impaired witness not competent to testify, that witness does not take the stand. Then the prosecutor *does not* get to bring in all of that now disqualified witness's classic out-of-court hearsay.

In the federal system, both sides are free to raise as appeal issues the finding of incompetency or the decision not to grant a competency hearing. That again is the way it happens in real life in real trials. Under section 595.02, subdivision 3, as in *Lanam* and this case at issue, we do not have a real trial. Rather, we have a fantasy or a "virtual reality" trial where the victim's testimony does not come in through the mouth and demeanor of the victim, but instead comes in through the mouth, demeanor, credibility, and patina of a "concerned acquaintance," or a "concerned parent," or a social worker, teacher, law enforcement person, medical personnel, etc. The federal rule and cases on mentally impaired witnesses serves the Sixth Amendment and due process far better than does section 595.02, subdivision 3.

If the child takes the stand and cannot recall clearly and does not make a good witness for the state, so what? That happens to witnesses of all ages in real life in real trials. That is the witness the state has. The fact-finder, judge or jury, gets to determine credibility. I will take judicial notice that your average common sense lay jury will have some composite knowledge of listening to young children between the ages of two and nine. And if they find the testimony under oath not credible, and if the out-of-court corroborating evidence also does not satisfy them by proof beyond a reasonable doubt of the defendant's guilt, then the defendant is constitutionally entitled to a verdict of not guilty.

All so-called concerns about protecting the child from exposure or emotional harm or damaging their psyche can be handled under the present state of the law and the discretion of district court judges. There are legal ways to close courtrooms in a sensitive trial to all but court personnel, attorneys, witnesses, and the defendant. There is the option of closed circuit television. The *Lanam* majority acknowledges

the power of the courts to use closed circuit television to facilitate a young child's testimony. That, at least, preserves a semblance of due process. There is evaluation of credibility by the fact-finder, and an opportunity for the constitutional right to cross-examine. The *Lanam* majority noted this option:

> In *Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), a prosecution of a defendant for sexually abusing a 6–year–old child, the Court upheld the use of a closed-circuit television procedure to facilitate the child's testimony after the trial court made a case-specific determination that the use of the procedure was necessary to protect the child from the emotional trauma of testifying in the defendant's presence.

*Lanam*, 459 N.W.2d at 660 (citation omitted). We recognize that state and federal cases have allowed for some leeway in how much face-to-face confrontation a defendant gets, *but Craig* and *State v. Conklin* retain the right of the defendant to cross-examine a witness through his attorney. *See Maryland v. Craig*, 497 U.S. 836, 857, 110 S.Ct. 3157, 3170, 111 L.Ed.2d 666 (1990) (holding use of procedure that allows child victim to testify without face-to-face presence of accused does not violate confrontation clause where evidence is subject to adversarial testing, including cross-examination); *State v. Conklin*, 444 N.W.2d 268, 273 (Minn.1989) (holding exception to requirement of face-to-face confrontation allowable only if court makes individualized finding witness needs special protection). Between confrontation, just merely looking at the witness, and cross-examination, which is the right to ask that witness questions, although both are mentioned in state and federal constitutions, the right to cross-examine is by far the more important of the two, the sine qua non of due process and a fair trial. So tinker with confrontation, as *Craig* did, but leave cross-examination alone, *as Craig did.*

In terms of child witnesses on the stand being uncomfortable or traumatized, many witnesses older than children are also uncomfortable and traumatized. That uncomfortableness does not trump a defendant's right to a fair trial. Further, trial judges have the historic right, and is used commonly, to keep attorneys, either for the state or for the defense, from badgering and harassing witnesses.

The "credibility" of the out-of-court hearsay in this case is likely to be less than the credibility of T.R.C. if he had testified in open court. By the time of the trial, T.R.C. would have been a full year and a half to two years older than when he gave his recollections which came in as hearsay.

The *Lanam* dissent accurately pointed out the irony of a child being declared incompetent to testify in a court of law at the age of, for instance, 3, 4, or 5, *but then,* having his statements made, when 10%, 20%, 30%, or 40% even younger, and presumably even more immature than on the day declared incompetent, *come into court as substantive evidence through the back door of hearsay.* *Lanam* stated:

> Is it then not ironical that hearsay statements made by the child at an even younger age when questioned at an earlier date by doctors, therapists, police officers, counselors, social workers, parents, and foster parents, and then when asked to understand the truthfulness and distinguish between fantasy and reality are deemed admissible because they are reliable and because the child is unavailable? The literature documents that a young child is more vulnerable to suggestion when questioned and more vulnerable to suggestions which stimulate fantasies.

*Id.* at 667 (footnote omitted).

There is no explanation in this case as to why T.R.C., born on December 8, 1992, who when found incompetent to testify on September 30, 1997, (the age of 4 years and 10 months) is deemed *retroactively competent* to testify back on July 28 through July 31, 1996, when he was only

three and a half years old! If the reason is that when T.R.C. was three and a half, he was surrounded by a foster mother, a social worker, a police officer, and a doctor, well then, fine. Put T.R.C. on the stand at four years and ten months of age, and allow the foster mother, the social workers, the police officer, and the doctor to be in the courtroom and to be around him during lunch and recess breaks.

If, for whatever reason, T.R.C. will not take the stand and/or the prosecution absolutely will not put him on the stand, and defendant declines to subpoena him, let the trial go on without his testimony and without his out-of-court testimony for corroborating purposes. If T.R.C. is declared incompetent, or declared competent, but the state chooses not to put him on the stand, and, thus, the out-of-court hearsay cannot come in, the state has a choice not to prosecute, or to prosecute with whatever admissible evidence they have. If they do not get a conviction, *that is what fair trials, the Bill of Rights, and the Minnesota Constitution are all about.*

A practical solution to the issue of how to conduct sex abuse trials with youthful victims and preserving a defendant's constitutional right to cross-examine is workable taking from the federal system on legally impaired people and adding common sense. A state supreme court can do it by judicial fiat just as it was done in *Spanel v. Mounds View School District No. 621,* 264 Minn. 279, 118 N.W.2d 795 (1962). In *Spanel,* quite simply, the Minnesota Supreme Court found "sovereign immunity" to be archaic, a model for injustice, and suggested to the legislature that it be changed or they would abolish it. *Spanel* stated in part:

> Thus the handwriting has long been on the courtroom wall. We have been troubled for three generations by the unheeded petitions of the lame Frederick Bank, the halt Jennie Snider, and the blind Frank Mokovich. Sine we have repeatedly proclaimed that this defense is based on neither justice nor reason,

the time is now at hand when corrective measures should be taken by either legislative or judicial fiat.

*Id.* at 285, 118 N.W.2d at 799.

Their solution was not complicated. They told the Minnesota Legislature that the next time they met, they would have to do something about this injustice or it would be overruled flat out, stating in part:

> [T]he court is unanimous in expressing its intention to overrule the doctrine of sovereign tort immunity as a defense with respect to tort claims against school districts, municipal corporations, and other subdivisions of government on whom immunity has been conferred by judicial decision arising after the next Minnesota Legislature adjourns, subject to any statutes which now or hereafter limit or regulate the prosecution of such claims.

*Id.* at 292, 118 N.W.2d at 803.

The rule on child victims by statute or by case law should be as follows: If you have a sexual abuse case (those now covered by section 595.02) and there is an alleged victim under the age of ten, create a legal presumption that the child is competent. Some base age, below which it is conceded that neither the child's in-court testimony nor out-of-court statements to anyone should come into a court of law as relevant, whether the lowest possible age is two or one, could be arrived at by some fair objective studies (perhaps under two, perhaps under eighteen months—that can be dealt with). T.R.C., where the alleged abuse took place at three and a half, and *Lanam,* where the victim was three, are the typical cases where victims that age and on up to nine can talk and relate incidents, but have artificially been endowed by section 595.02 with a "pass," meaning no obligation to take the stand like other witnesses.

Once notice has been given by the state that they intend to put the child victim on the stand, the defendant can demand a pretrial competency hearing. That hear-

ing, just like an omnibus hearing, has to be held on demand. The results of that hearing, competency or incompetency, are immediately appealable as a matter of right before the trial, either by the state or by the defendant. This is to insure that when the trial does go forward, both sides will know what evidence will be admissible and what will not. Yes, these are pretrial appeals, but the state has that limited right already, and as in pretrial appeals on the denial by summary judgment of a municipality's claim to discretionary immunity, we deem it advisable in the administration of justice to get certain key issues which may negate a trial, settled before trial. *See, e.g., Anderson v. City of Hopkins*, 393 N.W.2d 363, 364 (Minn.1986) (holding order denying motion for summary judgment on issue of immunity is appealable).

Following the pretrial competency hearing (and appeals), the child is declared competent to testify or incompetent to testify. If the child is declared competent and takes the stand, his out-of-court corroborating statements, subject to the rules of determining reliability, come in, not as primary substantive evidence, but as corroborating substantive evidence. If the child is declared competent, but no one calls him to the stand, none of the out-of-court statements come in either. If the child is declared incompetent and there is no pretrial appeal of that finding, or there is a pretrial appeal and the finding of incompetency stands up, the child does not take the stand and none of the out-of-court hearsay corroboration comes into evidence.

The rule serves everyone, including the Minnesota constitution. The state has a chance, like they wanted in this case, to put the T.R.C.s of the world on the stand, and then get in the out-of-court corroboration. A defendant gets a chance to cross-examine and inquire, at least, as to whether the victim is really sure the defendant is the one who did it, a most basic and accepted line of questioning in real trials, fair trials. On the other hand, if the child is declared incompetent and that ruling stands up on appeal, and no one can put the child on the stand, the state can go forward with whatever else they have, which is the same way it happens in real trials when a key witness dies or disappears or the state, for instance, to protect the identity of a confidential informant chooses not to put him on the stand. The state tries the case it has, not the case it wishes it had.

The state, before it can convict and incarcerate a citizen, is required to prove each and every essential element of the criminal charge by proof beyond a reasonable doubt *with admissible evidence.* When it cannot, no harm is done to the constitution. In fact, quite the contrary. That result buttresses the historical strength and the historical credibility of our State Constitution and the U.S. Constitution. It is when state and federal constitutional guaranties are bent, worked around, and broken, that harm comes to society.

I respectfully dissent. I would hold that Minn.Stat. § 595.02, subd. 3(b)(ii) cannot be read under the Minnesota Constitution, Article I, Section 6, to allow a person legally barred from testifying because of a final adjudication of incompetency, to have his out-of-court unsworn, uncross-examined hearsay come into a criminal trial as substantive evidence.